[Sac. No. 2001.  In Bank.—July 30, 1915.]

BELLE WILLIAMS, as Executrix of the Last Will and
Testament of W. H. Williams, Deceased, et al.,
Respondents, v. LAURA BELLE KIDD et al.,
Appellants.

DEED—DELIVERY TO THIRD PARTY—HOLDING UNTIL DEATH OF GRANTOR
—INTENTION OF PRESENTLY PASSING TITLE.—Where a person
makes a conveyance of property and places it in the hands of a
third party to be delivered to the grantee named in it on the death
of the grantor, such delivery is effectual to pass a present title
to the property to the grantee, if the intention of the grantor is to
make such delivery absolute and place it beyond his power there-
after to revoke or control the deed. Where a delivery is made
under these circumstances it is fully operative and effective to vest
a present title in the grantee, the grantor retaining only a life
estate in the property, and the third party or depositary holds the
deed as a trustee for the grantee named in it.

ID.—INTENTION NOT TO PRESENTLY PASS TITLE—INVALID DELIVERY.—
On the other hand where a deed is deposited with a third party to
be handed to the grantee on the death of the grantor, unless this is
accompanied by an intention on the part of the grantor that title
to the property shall thereby immediately pass to the grantee, there
is no delivery of the deed and consequently no title is transferred.
If the deed is handed to the depositary without any intention of
presently transferring title, but, on the contrary, the grantor in-
tended to reserve the right of dominion over the deed and revoke or
recall it, there is no effective delivery of the deed as a transfer of
title. So, too, if it be the intention of the grantor when he de-
posits a deed that it shall only be delivered to the grantee by the
depositary after the death of the grantor, and that the title is to
vest only upon such delivery after his death, then the deed is en-
tirely inoperative as constituting an attempt by the grantor to
make a testamentary disposition of his property, which may be
done only by will executed as required by the law of wills of this
state, and such a deed, the purpose of which is intended to be
testamentary, cannot be given effect.

ID.—DELIVERY—QUESTION OF FACT.—The finding by the court that the
deed in question was signed and acknowledged by the grantor and
at the time handed to a third party, with directions to him to keep
the same and give it to the grantee named therein when the grantor
was dead, and that the depositary did so, does not necessarily com-
pel the legal conclusion that the delivery was intended to immedi-
ately vest title to the property in the grantee, subject only to the
retention by the grantor of a life estate; and the contention that

the further finding of the court that it was not the intention of the grantor, when he handed the deed to the depositary, to divest himself of the present title to the property, and, therefore, there was no delivery for that purpose, is merely an unwarranted conclusion of law from such facts, cannot be maintained, as the question is to be determined from all the facts in the case, and it is held that under the evidence the findings of the trial court are sustained.

ID.—ESSENTIALS OF DELIVERY—INTENT TO TRANSFER TITLE.—It is essential to the validity of a transfer of real property that there be a delivery of the conveyance with intent to transfer the title, and the true test under which delivery is to be determined is in ascertaining whether in parting with the possession of the conveyance the grantor intended thereby to divest himself of title. If he did, there was an effective delivery. If not, there was no delivery. The solution of this question is grounded entirely on the intention of the grantor, and this essential matter of intention is a question of fact to be determined by the trial-court from a consideration of all the evidence in a given case·bearing on the question.

ID.—FINDING—SUFFICIENCY OF EVIDENCE—INFERENCES AND DEDUCTIONS.—In such a case where the finding of the trial court that the delivery was not intended to pass a present title rests mainly upon inferences which it deduced from the facts and circumstances in evidence, if these inferences were fairly and reasonably deducible from them, the finding must stand, as the supreme court cannot set aside the finding of the trial court unless it appears that there is no evidence to support it, or the evidence is so clearly preponderating against the finding as made that it can be said that there is no substantial evidence to sustain it.

ID.—ATTEMPTED TESTAMENTARY DISPOSITION—INVALIDITY OF.—A deduction from the evidence of a testamentary purpose on the part of the grantor in making the deeds, which the court was fairly justified in making (independent of an inference of abandonment of such purpose), warranted the finding that the deed in question was not delivered, because a deed delivered with intent that it shall take effect only on the death of the grantor, being an attempted testamentary disposition of property, is void.

ID.—GENERAL PLAN TO CONVEY PROPERTY—CIRCUMSTANCES TO BE CONSIDERED—DEEDS TO OTHERS.—Where the deed in question was made at the same time with three other deeds which it is claimed were executed by the grantor to his wife and daughter in pursuance of what is alleged as a scheme entertained by the grantor which contemplated several separate deeds to all his property, the fact that the deeds other than the one in issue were not delivered is to be considered to determine what the intention of the grantor was respecting the delivery of the latter deed, as it is to be assumed that if he intended to make an effective delivery of that deed so as to pass a present title, he also intended to deliver

the other deeds executed at the same time with the same intent, the deed in question being executed to a grandniece, for whom it is not shown that he had an affection above what naturally exists between persons of that relationship.

ID.—FAILURE OF DEPOSITARY TO MAKE ENTRY RESPECTING DEEDS IN NOTARIAL RECORD.—In such a case the additional circumstance further indicating that the making of these deeds was part of a testamentary scheme which the depositary (who testified that he and the grantor were the only ones present at the time of their execution, and he being the notary who took the acknowledgment), knew had been abandoned at its very inception, is the fact that the depositary made no entry respecting these deeds at the time they were acknowledged in his notarial record, as the law requires he should do, and did not do so until several years thereafter.

ID.—NEGOTIATIONS OF GRANTOR TO SELL PROPERTY—FAILURE OF DEPOSITARY TO CALL ATTENTION TO DEEDS.—It was proper to consider the further circumstances that the depositary at the time of negotiations by the grantor for the sale of some of the property covered by the deeds, failed to make any suggestion to the grantor or call his attention to the fact that he could not make a sale of the property, where the depositary knew that if the deeds had the effect, as he claimed they had, of vesting a present title in the grantee, the grantor could not convey his fee simple title to the proposed purchaser.

ID.—FAILURE TO MENTION DEED TO GRANTEE—STATEMENT AS TO OWNERSHIP OF PROPERTY—FAILURE TO DISCUSS PLAN WITH GRANTOR.— The fact that the depositary made no mention of the deed to the grantee, to whom he was engaged at the time it is claimed the deeds were executed and to whom he was afterward married, until after the death of the grantor, although no secrecy respecting it was enjoined on him by the grantor, was likewise a circumstance which could be considered by the court as tending to show that there was no delivery of the deed with intent to pass present title and that the depositary knew it; and a statement by the depositary made after the death of the grantor that the property covered by the deed and other property described in the other deeds was part of the estate left by the grantor which would go to his wife and his two daughters, was a circumstance to be considered, as well as the fact that neither the deeds nor the original scheme which the grantor had in view when he made them were ever mentioned by the grantor or grantee to each other, though they were together in the grantor's office for a period of eight years after the deeds were made.

ID.—FAILURE OF GRANTOR TO ASK RETURN OF DEED.—It may reasonably be assumed that the grantor never asked the depositary to return the deed in question to him because he expected that all the papers which he intended to execute in conformity with his contemplated

scheme were to be kept in his office and that as the depositary understood that the whole testamentary scheme and all done under it had been abandoned, that the deed fell with it, and that at any time if he desired it, the depositary would hand it to him, where the depositary was the confidential clerk in the office of the grantor where the papers of both were kept, and the grantor did not tell the depositary to place the deed in any particular place, but simply to keep it.

ID.—EVIDENCE—ACTS AND DECLARATIONS OF GRANTOR—ADMISSIBILITY OF.—The facts and declarations of a grantor made after he has parted with the title to property and in disparagement of it are inadmissible when made in the absence of the grantee; but in this case where the main issue is whether or not the deed was delivered with intent on the part of the grantor to do so, the conduct and declaration of the grantor covering a period subsequent to the making of the deed, and while the depositary held it are admissible as bearing on the issue as to whether there had been a delivery of the deed, as such matters have some tendency to show that there was no intention on the part of the grantor to deliver it except as a part of a testamentary scheme which had been abandoned.

ID.—BURY v. YOUNG—CONSTRUTCION OF.—If the case of *Bury* v. *Young*, 98 Cal. 446, is to be construed as holding that where the issue is whether or not the grantor so delivered his deed as to convey title, the acts and declarations, in short, the conduct, of the deceased grantor cannot be given in evidence in disproof of delivery, that case should be overruled as contrary to sound reason and to the great weight of authority.

ID.—DELIVERY—DEFINITION OF.—"Delivery" is a word of well-defined meaning in the law. It is the act, however evidenced, by which the instrument takes effect and title thereby passes.

ID.—EXECUTION—DEFINITION OF.—"Execution" is a word of well-defined legal meaning, and includes effective delivery.

ID.—STARE DECISIS—RULES OF EVIDENCE.—There is nothing in the doctrine of *stare decisis* which can apply to a mere rule of evidence in which no one has a vested right.

ID.—DELIVERY — BURDEN OF PROOF — DECLARATION OF DEPOSITARY— WHEN ADMISSION NOT PREJUDICIAL.—Even if proof of the acts and declarations of the depositary, while he claimed to be holding the deed as depositary of the grantor, was improperly admitted by the court through original and independent evidence offered by plaintiffs in their case in chief and not by way of impeachment, it was not so prejudicial as to warrant a reversal, where plaintiffs by adopting a different order of proof than that pursued by them on the trial might have thrown on the defendants the burden of proving the delivery of the deed, and might have sustained their case without calling the depositary as a witness.

ID.—ORDER OF PROOF—IMPEACHMENT.—While in such condition of the proof as was made by plaintiffs defendants would have made out a *prima facie* showing of delivery by the production of the deed by the grantee, this *prima facie* showing would have been overcome by proof of the unquestioned fact in such a case that the grantee had no knowledge of the existence of the deed and did not come into possession of it until after the death of the grantor, and in that state of the case defendants would have been compelled to call the depositary as their own witness to prove the alleged delivery to him of the deed to the grantee named in it, and plaintiff could have cross-examined him with the view to eliciting evidence of his acts and declarations inconsistent with the delivery claimed and if he denied such acts and declarations proof thereof would have been permissible to plaintiffs by way of impeachment.

APPEAL from a judgment of the Superior Court of Colusa County and from an order denying a new trial. H. M. Albery, Judge.

The facts are stated in the opinion of the court.

Frank Freeman, and Thomas Rutledge, for Appellants.

S. C. Denson, Ernest Weyand, Stanley Moore, Arthur C. Huston, J. Craig, A. A. Moore, and Garret W. McEnerney, for Respondents.

LORIGAN, J.—This action was brought to set aside a deed purporting to convey property in the town of Williams, Colusa County, known as the "W. H. Williams Brick Warehouse," and also seven lots in block 36 in said town, made by W. H. Williams to the defendant Laura Belle Kidd, under her name of Laura Miller, and prior to her marriage with the defendant, F. E. Kidd.

Plaintiff and intervener are the daughters and residuary legatees under the will of W. H. Williams, deceased. Defendant Laura Belle Kidd is the grandniece of said Williams and the purported conveyance to her was dated September 30, 1901. W. H. Williams died May 18, 1909, and the deed in question was recorded on July 24, 1910.

The complaint alleged that defendants asserted a claim to said property adversely to the estate of decedent and to plaintiff based on said deed, which deed it is alleged was never subscribed, executed, or delivered by Williams, or by any one

acting for him, or by his authority, and that his signature thereto was forged.

In their answer defendants disclaimed any assertion of interest in the property by defendant F. E. Kidd; denied the forgery and nondelivery of the deed, and alleged that said deed at the date it bore was signed, executed, and acknowledged by Williams and on the same day delivered by him to the defendant F. E. Kidd, with directions and instructions from said Williams to him to deliver the same to defendant Laura Belle Kidd (then Laura Miller) upon the death of said Williams; that upon the death of Williams said deed was delivered to said defendant Laura Belle Kidd, and she is now the owner of the property described in it.

The court found that the deed in question was duly signed and acknowledged by Williams on its date—December 30, 1901; "that after said deed was signed and acknowledged by said Williams, and on the 30th day of December, 1901 said Williams handed the same to F. E. Kidd, with instructions to the latter to keep the same and to give it to Laura Miller, the grantee named therein, after he (Williams) was dead; that said F. E. Kidd took said deed and kept it in his possession until the death of said W. H. Williams, and thereafter, on the ―― day of May, 1909, he delivered the same to the defendant, Laura Belle Miller Kidd, who is the same person named as grantee in said deed, and who, thereafter, on the twenty-fourth day of July, 1910, caused the same to be recorded in the office of the county recorder of Colusa County.

"7.    That it was not the intention of said W. H. Williams, when he delivered said deed to said F. E. Kidd, nor at any other time, to divest himself of the present title to said described premises, nor was it then, nor at any other time, his intention to vest a present title to said premises in the grantee named in said deed.

"8.    That said deed was never delivered, and said W. H. Williams did not thereby part with his title in fee simple to said described real property."

As conclusions of law the court found that said Williams never parted with his title to said property; that he was the owner in fee simple thereof at the time of his death; that the deed in question was invalid and void; that defendants have no title or interest in said property and that, subject

to administration, plaintiff and intervener are each the owner in fee of an undivided one-half interest therein.

Judgment was entered for plaintiff and intervener. Defendants moved for a new trial, which was denied, and this appeal is from both the judgment and order denying their motion.

The contention of appellants is that the evidence is insufficient to justify the finding of the court that the deed in question was never delivered by Williams. It is further claimed that error was committed by the court in its rulings on the admission of testimony.

It is well settled that a person may make a conveyance of property and place it in the hands of a third party to be delivered to the grantee named in it on the death of the grantor, and that such a delivery will be effectual to pass a present title to the property to the grantee, if the intention of the grantor is to make such delivery absolute and place it beyond the power thereafter to revoke or control the deed. Where delivery is made under these circumstances and with this intention, it is fully operative and effective to vest a present title in the grantee, the grantor retaining only a life estate in the property and the third party or depositary holds the deed as a trustee for the grantee named in it. (*Bury* v. *Young,* 98 Cal. 451, [35 Am. St. Rep. 186, 33 Pac. 338]; *Moore* v. *Trott,* 156 Cal. 353, [134 Am. St. Rep. 131, 104 Pac. 578].)

On the other hand it is equally well settled that where a deed is deposited with a third party to be handed to the grantee on the death of the grantor, unless this is accompanied by an intention on the part of the grantor that title to the property shall thereby immediately pass to the grantee, there is no delivery of the deed and consequently no title is transferred. If the deed is handed to the depositary without any intention of presently transferring title, but, on the contrary, the grantor intended to reserve the right of dominion over the deed and revoke or recall it, there is no effective delivery of the deed as a transfer of title. So, too, if it be the intention of the grantor when he deposits a deed that it shall only be delivered to the grantee by the depositary after the death of the grantor, and that the title is to vest only upon such delivery after his death, then the deed is entirely inoperative as constituting an attempt by the grantor to make

a testamentary disposition of his property. This may only be done by will executed as required by the law of wills of this state, and a deed, the purpose of which is intended to be testamentary, cannot be given effect.

Here the court found that the deed in question was signed and acknowledged by Williams and at the time handed to F. E. Kidd, with directions to him to keep the same and give it to Laura Miller when he (Williams) was dead, and that Kidd did so. Counsel for appellants claim that these facts as found by the court were legally conclusive to the effect, under the decisions above cited, that Williams delivered the deed with intent to immediately vest title to the property in the grantee, Laura Miller, subject only to the retention by him of a life estate therein, and that the further finding of the court that it was not the intention of Williams, when he handed the deed to the depositary Kidd, to divest himself of the present title to the property and therefore there was no delivery for that purpose is merely an unwarranted conclusion of law from such facts. But this position is not tenable. It may be true that if the only evidence in the case and the only facts found were as recited above with reference to the making of the deed—the instructions of Williams and the carrying out thereof by Kidd—it might be held that these were sufficient to show that the deposit of the deed with Kidd was accompanied by an intention on the part of Williams that title to the property should thereby vest immediately in the grantee. But it does not follow that on these facts as found the conclusion must necessarily follow that the intention of the grantor was to vest a present title in the grantee and the deed delivered for that purpose. All these facts may exist and it still be a question as to what was the intention of the grantor. Here the issue made by the pleadings was whether Williams, when he handed the deed to Kidd, under the instructions he gave him, intended to vest a present title in the grantee named in it and his delivery of the deed was made to effect that purpose.

It is essential to the validity of a transfer of real property that there be a delivery of the conveyance with intent to transfer the title, and the true test under which delivery is to be determined is in ascertaining whether in parting with the possession of the conveyance the grantor intended thereby to divest himself of title. If he did, there was an

effective delivery of the deed. If not, there was no delivery. The solution of this question is grounded entirely on the intention of the grantor, and this essential matter of intention is a question of fact to be determined by the trial court from a consideration of all the evidence in a given case bearing upon the question. (*Bury* v. *Young,* 98 Cal. 451, [35 Am. St. Rep. 186, 33 Pac. 338]; *Kenniff* v. *Caulfield,* 140 Cal. 34, [73 Pac. 803]; *Estate of Cornelius,* 151 Cal. 552, [91 Pac. 329]; *Follmer* v. *Rohrer,* 158 Cal. 757, [112 Pac. 544].)

The evidence in this case is made up of facts and circumstances occurring at the time of the making and delivery of the deed in question, and facts and circumstances occurring subsequent to that time forming no part of the *res gestae,* but received in evidence as tending to throw light on the intention of the grantor when he made and handed the deed to Kidd.

At the time the deed was made by Williams he was a man 70 years of age. He had a few years previously become afflicted with cataracts in both eyes, so seriously affecting his eyesight that he could hardly tell one paper from another. His faculties were not impaired. He was a man of large affairs and had a business office in the town of Williams, possessed several ranches, and owned a large number of vacant town lots in Williams, as well as some improved property. On one of these lots was a livery stable, on another a hotel and others constituted the brick warehouse property. This latter was the best paying and the most desirable of his property. Williams made his will in 1904. Laura Miller was a grandniece of Williams, of whom he had several. Kidd was a clerk in the office of Williams and had been for a number of years prior to the making of the deed. From 1900 he was the manager of the warehouse property and prepared for Williams deeds, mortgages, and releases of mortgages and papers of that nature; attended to any work that came up in the office, and, as he defines his position himself, he was the general office man for Williams, attending to any work that was required of him. He attended to the insurance business and was a notary public.

The only evidence of what occurred at about the time the deed was prepared, signed, and delivered by Williams, is that of the depositary and nominal defendant, F. E. Kidd. He testified that he and Williams were the only persons present.

He prepared the deed and as notary took the acknowledgment of Williams; that at the request of the latter and at the same time he prepared three other deeds—two of these in favor of Miss Belle Williams and one to Mrs. Williams; one of the deeds to Miss Williams covered the "Williams Hotel" in Williams; the other the brick livery stable; the deed to Mrs. Williams covered the residence property; all of these properties were embraced in four deeds and were signed at the same time and the acknowledgments taken by Kidd; no deed was drawn to his daughter, Marguerita Williams. As to the particular circumstances surrounding the making of all these deeds, it appears from the testimony of Kidd that during several days before their preparation Williams had spoken to him about the preparation of deeds to all his property. As he stated, Williams "spoke of leaving his property in that way—by deed" and that a separate deed should be made for each piece of property; that he and Williams collected the necessary data for doing so, and he started to carry out the instructions given him. When he started to draw the deeds in line with the instructions of Williams he told the latter that he thought the preparation of them all by him would take too much work and that he doubted his ability to do it. He, however, prepared the four deeds above referred to, but either on the day they were drawn or shortly afterwards a further talk on the subject of preparing the other deeds was had between Williams and himself, and he again told Williams that the preparation of all the deeds he contemplated would make a great deal of work, that he was not sure of his ability or knowledge in the matter; that it was too much of an undertaking, and advised Williams to get some one else to finish it. Williams made no reply to this statement of Kidd, and no further deeds were drawn nor the matter ever afterwards referred to between them. The only reason assigned by Kidd why the matter stopped with the preparation of these four deeds only was because of the statements made by him to Williams expressing a doubt of his ability to carry out the scheme and his advice to Williams to have it done by some one else. Though for some eight years afterwards he and Williams were daily together in the office, nothing was ever said by either of them about further carrying out the original scheme of Williams, nor a word said about the four deeds which had been prepared under it. The three separate deeds

from Williams to his wife and daughter, after being acknowledged, were put in an envelope by him and handed to Williams, who placed them in his safe. The deed to Laura Miller was delivered to Kidd as soon as it was executed in the manner and with the instructions as found by the court.

The witness also testified that he was engaged to marry Laura Miller at the time these deeds were made, though he had not informed Williams about the matter, and it does not appear from the evidence that Williams ever knew anything about it. He further stated that it was his custom to enter up acknowledgments taken by him in his notarial register on the day or the day after they were taken; that he usually made a memorandum for that purpose and at the time of the execution of the deeds by Williams did so, but made no entry whatever in his notarial register of these deeds until several years afterwards. Nothing was further done by him respecting the deed in question until he married the grantee in 1903, when, a few days afterwards, he placed the deed to her in an envelope and indorsed it "October 23, 1903," which was the only indorsement that he had made respecting the deed up to that time. Subsequently, on November 27, 1903, he made an entry in his notarial book as follows: "W. H. Williams," leaving five blank leaves which, however, were never afterwards filled up; that after the deeds were executed nothing was ever said about any of them by either Williams or himself; that he never mentioned to Laura Miller, before or after she became his wife, the fact that this deed in question had been made in her favor, or until after the death of Williams. Williams had not asked him to keep or said anything to him about keeping the making of any of the deeds secret.

It further appears from the evidence that the three deeds other than the one in question here were never seen by anybody after their execution and were not found among the papers of Williams examined after his death. Whatever became of them is not known; at least the evidence does not disclose. They were not delivered; neither the wife nor the daughters of Williams ever saw them, nor did Kidd after they were placed in the safe by Williams. The latter never spoke of any of the deeds made, including the one in question, after they were made, nor did Kidd, until after the death of Williams. Subsequent to the execution of the deeds Williams made extensive improvements on the warehouse property,

aggregating some five thousand five hundred dollars. In the fall of 1904 a party named Becker applied to Williams to purchase the warehouse property. Williams refused to sell the warehouse alone, stating that he wanted to sell the hotel with it, or that he would sell the hotel separately; that he would take forty thousand dollars for the two pieces—the warehouse and hotel—or twenty thousand dollars for the hotel. Nothing came of these negotiations. This conversation was had in the office of Williams. Kidd was present at the time and heard the conversation. The morning after the death of Williams a professional nurse—Morton—who had waited on him had a somewhat extended conversation with Kidd, in which they talked about the affairs of Williams and the estate left by him, Kidd informed Morton of the different properties making up the estate, particularly mentioning the warehouse as one item of it, and upon a suggested possibility that there might be a contest between the heirs of Williams, Kidd stated that there would not be any, that the property would go to Mrs. Williams and her two daughters. After the death of Williams, Miss Belle Williams called on Kidd for the keys, and those, including the warehouse keys, were delivered to her by him.

These matters, in the main, make up the evidence under which the court was to determine whether, when Williams delivered the deed in question to Kidd, he intended thereby to pass a present title in the property to the grantee. The court found that he did not. This finding of the court, it is true, rests mainly upon inferences which it deduced from the facts and circumstances in evidence, but if these inferences were fairly and reasonably deducible from them, the finding must stand. This court cannot set aside the finding of the trial court unless it appears that there is no evidence to support it, or the evidence is so clearly preponderating against the finding as made that it can be said that there is no substantial evidence to sustain it. We are satisfied from a full consideration of the evidence that this cannot be said.

Taking the facts and circumstances under which the deed in question was made, we think the court was justified, from a consideration of these alone, in concluding that it was not intended by Williams that the delivery of the deed in question to Kidd should pass to the grantee a present title to the property.

Williams, when the matter of the making of the deeds to his property was first broached to Kidd, while an old man, was actively engaged in his business affairs, which comprehended the care and management of a large amount of ranch property, and likewise a great many lots and blocks in the town of Williams, the latter of which he was from time to time selling off. Kidd was his confidential clerk, to whom he would naturally turn for assistance in case of any measures which involved trust and confidence, and the preparation of instruments relative to his property transactions were generally entrusted to Kidd. It was a fair inference to be made by the court that Williams, when he commenced the preparation of these deeds, had in contemplation a testamentary disposition of all his property, and that the making of the four deeds, including the one in controversy, was a part thereof. That he so intended would appear from the language he used in the several talks held between himself and Kidd before they actually commenced the preparation of the various deeds which the scheme contemplated. He spoke of "leaving his property that way—by deed," which is not reasonably open to any other construction. His purpose was to make a separate deed to each piece of his property to those whom doubtless he deemed entitled thereto as the natural recipients of his bounty, although on account of the abandonment of the scheme Williams had no occasion to declare to Kidd the persons whose names should be inserted in the various contemplated deeds.

It is hardly to be assumed that a man actively engaged in business, as Williams was at this time, and making sales of his property as opportunity presented, contemplated divesting himself of title to all of it by deeds previously delivered with that intent. On the contrary, under the scheme which he had in view, he believed that in making these various deeds he would not be divesting himself of title to the property; that they would not interfere with his changes in the deeds or making transfers of the property represented by them should he make a sale of any of it, or should he desire to change the transfers; that though making separate deeds would involve much labor (a moderate estimate of the number of deeds which it would be necessary to make, based on an enumeration in the record of the pieces of property held by

him, would require about forty deeds), yet by this means he could the more readily during his lifetime make changes as to the beneficiaries consequent on sales, or as his inclination prompted him, than he could do were many pieces of property embraced in a single conveyance. The language used by Williams and the plan he had formulated for carrying out the intention which he expressed doing, warranted an inference that his plan, which embraced the four deeds he actually made, and the others he had contemplated making, was simply to effect, as a whole, a testamentary disposition of his property; that if, in the continued activities of his business with respect to all of it, he made no sales of any portion of it, or if he concluded to make no changes in the deeds during his lifetime, then the deeds as first drawn should, upon his death, and then only, be delivered to the grantees, to take effect and vest title in them; that even as to that purpose he had abandoned it in its inception on account of Kidd's expressed inability to carry out the testamentary scheme in its entirety, and that the abandonment included a revocation of all the deeds which had been prepared pursuant to it, including the one here in question, and that Williams and Kidd both so understood. This deduction of a testamentary purpose on the part of Williams in making the deeds, which the court was fairly justified in making (independent of the inference of abandonment of such purpose) warranted the finding that the deed here in question was not delivered, because a deed delivered with the intent that it shall take effect only on the death of the grantor, being an attempted testamentary disposition of property, is void. (*Hayden* v. *Collins*, 1 Cal. App. 259, [81 Pac. 1120]; *Walter* v. *Way*, 170 Ill. 96, [48 N. E. 421]; *Johnson* v. *Johnson*, 24 R. I. 571, [54 Atl. 378]; *Schlicher* v. *Keeler*, 67 N. J. Eq. 635, [61 Atl. 434].)

But aside from the circumstances immediately connected with the making of the deeds, there were other circumstances which were to be taken into consideration by the trial court as bearing on the question of the intention and purpose of Williams respecting them. These deeds were clearly made as part of a scheme entertained by Williams, which contemplated several separate deeds to all his property. It of course cannot seriously be questioned but that whatever his intention was in the contemplated disposition of all his property; whether it was to make a testamentary disposition of it by

way of deeds, or under such deeds to vest a present title in the grantees, he had the same intention as to each and every parcel of it. He certainly did not intend to make a testamentary disposition by one deed and by another vest the present title. In this connection it may be said that there was no evidence of such affection on the part of Williams for his grandniece, Laura Miller, above what naturally exists between persons of that relationship, which could raise any inference that, while his general plan was to make testamentary disposition of his property, yet, as to the deed to her, he intended it should vest a present title. In furtherance of whatever his intention was, and particularly in attempting to carry out his entire scheme as he had devised it, he made these four deeds, all of which were executed together and evidently intended by Williams to effect the same purpose. Three of these—deeds to his wife and daughter— were never delivered. This was a circumstance to be considered in determining what the intention of Williams was respecting the delivery of the deed in question. It is only reasonable to assume that if Williams intended to make an effective delivery of that deed so as to pass a present title, he also intended to deliver the other deeds executed at the same time with the same intent. If he had delivered them, that fact would have had weight as tending to show such an intention with reference to the deed in question. But as these other deeds were never delivered or ever heard of after they were executed, this circumstance, on the other hand, was properly to be taken into consideration as tending to show that Williams did not deliver the deed in question to Kidd with any such intention. In *Napier* v. *Elliott,* 162 Ala. 129, [50 South. 148], it is said: "As a circumstance bearing upon the question of intention as to the delivery of the deed it was competent for the defendants to show that at the time of the making of the deed, and contemporaneous therewith, the grantor made two other deeds to Lem Walden and Josiah Hughes embracing all the lands the grantor had left after the deeds to the plaintiff and her mother, and the further fact that the deeds to Walden and Hughes were never delivered. This evidence, when taken in connection with other evidence as to the purpose of the grantor in making the deeds, . . . actual delivery of plaintiff's deed being a disputed fact, was both competent and relevant as tending to negative the

grantor's intention of delivery of plaintiff's deed. The weight of it, however, and as to whether, in connection with all of the evidence in the case, it was sufficient to negative such intention, was a question for the jury.''

As an additional circumstance further indicating that the making of these deeds was part of a testamentary scheme which Kidd knew had been abandoned at its very inception, is the fact that Kidd made no entry respecting these deeds at the time they were acknowledged in his notarial record, as the law requires he should do. (Pol. Code, sec. 794.) He did not do this until several years after they were executed. His excuse is that he did not make an entry at the time because he did not want their execution to appear as a matter of public record. But it is not suggested why the public or any member of it would be curious enough to try to ascertain from the notarial record whether Williams had made any deeds or not. Williams had not asked Kidd to omit the entries. He had enjoined no secrecy on Kidd whatever respecting the deeds. The trial court might well question the merit of the excuse given by Kidd in view of the fact that he did make an indefinite entry two years afterward and about a month after he married the grantee in the one in question, which removed in a measure the secrecy of the transaction which he was so solicitous to keep, and which entry he could just as well have made at the time the deeds were acknowledged. The trial court may have well concluded that the failure to make the entries at the time the deeds were made did not spring from any desire to preserve secrecy in the transaction, but because Kidd knew that the deeds were part of a testamentary scheme, abandoned at its inception, and that the deeds were not intended to be effective even for testamentary purposes, and hence no entry respecting any of them needed to be made.

There were further circumstances which were proper to be taken into consideration by the trial court; the failure of Kidd to make any suggestion to Williams or call his attention to the fact that he could not make a sale of the warehouse property or of the hotel property such as Becker was negotiating for with him and which he was disposed to make, because Kidd knew that if the deeds had the effect, as he claimed they had, of vesting a present title in Laura Miller, Williams could not convey the fee simple title to the property

which Becker wanted to purchase and Williams offered to
sell. The fact that, in the presence of Kidd as depositary
of the deed to the warehouse, Williams was offering to sell
the property as the owner thereof, without any protest from
Kidd, or suggestion from him that Williams might not do it,
and an apparent acquiescence thereby in the right of Will-
iams to make the sale, might be considered by the court as
some evidence indicating that both of them understood that
the deeds were only part of an abandoned testamentary plan,
and that Williams still had absolute title to the property.
The fact that Kidd made no mention of the deed to the
grantee, to whom he had been married, until after the death
of Williams, although no secrecy respecting it was enjoined
on him by Williams, was likewise a circumstance which could
be considered by the court as tending to show that there was
no delivery of the deed with intent to pass present title, and
that Kidd knew it (*Follmer* v. *Rohrer*, 158 Cal. 757, [112 Pac.
544] ), as was likewise his statement made after the death of
Williams that the warehouse property and the other property
described in the three deeds was part of the estate left by
Williams which would go to his wife and his two daughters.
The fact that neither the deeds nor the original scheme which
Williams had in view when he made them were ever men-
tioned by Williams or Kidd to each other, though they were
together in William's office for a period of eight years after
the deeds were made, was matter for consideration by the
court as tending to warrant a similar inference.

Taking into consideration all these circumstances, it cannot
be said but that they fairly warrant the inferences drawn by
the trial court and on which its finding of nondelivery was
based, that it was not the intention of Williams when he de-
livered the deed to Kidd to divest himself of present title to
the premises described in the deed, nor was the deed deliv-
ered with any such intent or for such purpose; that this deed
was made and handed to Kidd solely as part of a testa-
mentary scheme which was abandoned at the inception, and
this deed was intended and understood by both Williams and
Kidd to be revoked by such abandonment.

There is, it is true, the circumstance that Williams never
asked Kidd to return the deed in question to him. But Will-
iams was devising his testamentary plan with his confidential
clerk in his own office where the papers of both of them were

kept. Williams had not told Kidd to place this deed in any particular place, but simply to keep it. The papers of Williams and Kidd were kept in William's safe in the office— those of Kidd in a tin box where this deed was placed (and kept by Kidd until somewhat over a year before Williams died), though no specific instructions were given by Williams to place it in this box. Williams and his daughter, Belle Williams, who also assisted her father a great deal of the time in his business affairs, particularly in the office on account of his impaired eyesight, had alone the combination to this safe. It is only reasonable to assume that Williams expected that all the papers which he intended to execute in conformity with his contemplated scheme, were to be kept in the office, and that the reason he did not actually request the return of this deed afterwards was because, as both he and Kidd understood that the whole testamentary plan and all done under it had been abandoned, this deed fell with it, and that at any time, if he desired it, Kidd would have handed it to him.

This brings us to a consideration of the assignments of error made by appellants as to the admission by the court in evidence of the conversation between Becker and Williams relative to the purchase and sale of the warehouse and hotel property; testimony as to the improvements made by Williams on the warehouse property, and other acts and declarations of Williams occurring subsequent to the making of the deeds in question.

It is, of course, well settled that acts and declarations of a grantor made after he has parted with the title to property and in disparagement of it are inadmissible when made in the absence of the grantee, and it is the claim of appellants that the conduct and declarations of Williams after the deed was handed to Kidd were inadmissible as contravening this rule.

But here the very question was whether Williams had ever parted with title to the property. This was the main issue in the case, the claim of respondents being that there had been no delivery of the deed with intent on the part of Williams to do so. The conduct and declarations of Williams covered a period subsequent to the making of the deed and while Kidd held it as a depositary, and we are satisfied that such acts, conduct, and declarations of Williams with reference to the property during that period were properly admissible as bear-

ing on the issue as to whether there had been a delivery of
the deed.    All these matters had some tendency to show that
there was no intention on the part of Williams to deliver it
except as a part of a testamentary scheme which he had
abandoned.

In support of their contention that these acts and declara-
tions of Williams just referred to were inadmissible reliance
is had by appellants on *Bury* v. *Young,* 98 Cal. 446, [35 Am.
St. Rep. 186, 33 Pac. 338].    If that case is to be construed
as holding that where the issue is whether or not the grantor
so delivered his deed as to convey title, the acts and declara-
tions, in short, the conduct, of the deceased grantor cannot
be given in evidence in disproof of delivery, then we think
that *Bury* v. *Young* should be overruled as contrary to sound
reason and to the great weight of authority.    This may be
done without interference with any vested right, since, at the
most, *Bury* v. *Young* but lays down a rule of evidence, and
as the purpose of all rules of evidence is to aid in arriving at
the truth, if it shall appear that any rule tends rather to
hinder than to facilitate this result, to promote rather than
to repress fraud, it should be abrogated without hesitation.
In its language, however, it is to be noted that *Bury* v. *Young*
does not lay down this rule.    Its sole statement is that "the
grantor's declarations and acts made and done in his own
interest *months after the deed was delivered* are not admis-
sible as indicating his intention in delivering the deed."
(The italics are our own.)    It is said that this principle is
elementary, and so it is.    It is further said that there is
nothing in *Dean* v. *Parker,* 88 Cal. 283, [26 Pac. 91], "tres-
passing upon that doctrine." 'Neither is there.    But it is to
be noted that all of this is based upon the assumption of an
actual prior delivery of the instrument.    "Delivery" is a
word of well-defined meaning in the law.    It is the act, how-
ever evidenced, by which the instrument takes effect and title
thereby passes.    Of course it is true that after such delivery
no acts or declarations of the grantor in derogation of his
grant will be received.    But where the vital question is
whether or not he did deliver the instrument, and where, as
always in such cases his lips are sealed by death, and the
opposing testimony of the grantee or depositary, honest or
fraudulent, cannot be contradicted by him, it is but an invita-
tion to fraud and perjury and to their success to refuse

admission to such evidence. While it has been stated that *Bury* v. *Young,* therefore, does not in terms declare for a rule excluding evidence of the conduct of the grantor when delivery is the issue, it is but fair to add that it is construed as doing so by at least one of the justices in the subsequent case of *Ord* v. *Ord,* 99 Cal. 524, [34 Pac. 83]. But in that case again it is to be noted that the rule laid down is the unimpeachable one that "a grantor will not be permitted to disparage his deed by declarations made or acts done by him in his own interest *subsequent to its execution.*" (The italics again are ours.) Further it is to be noted that "execution" is a word of well-defined legal meaning, and is here employed with that meaning. "Execution" includes effective delivery. It is for the first time in the concurring opinion of one of the justices declared in the Ord case that the subsequent declarations and conduct of the grantor "denying the fact of the previous delivery of the deed" will not be received. Here, in strictness, is the first and only declaration of this rule, and it is to be noted that it is not made by the court, but by one of the justices thereof. There is, therefore, nothing in our decisions to embarrass us in declaring what we conceive to be the correct rule, and nothing, of course, in the doctrine of *stare decisis* which can apply to a mere rule of evidence in which no one has a vested right. Take for illustration the case of a forged deed, as it was charged this deed was. The grantor naturally knows nothing about its existence; indeed the instrument may not have been written until after his death. When rights under this forged deed are asserted, the heirs of the dead grantor feel equally certain, both that the instrument is a forgery and that it was never delivered, and they so plead. They are able to show that their ancestor during his lifetime treated the property as his own, offered it for sale as his own, wrote and talked to the asserted grantee after the date of the deed stating that it was his own; that he declared what disposition he proposed to make of it, and that he made such disposition by will. They are not permitted to prove any of these things because of the mere assertion of delivery by the grantee as of the date that the instrument purports to bear. The same reasoning applies to any other asserted delivery—to delivery to a depositary, and if the same rule does not follow the reasoning, then titles will pass, not in accordance with the truth, but in accordance

with the honesty or dishonesty of the depositary, whose testimony alone can be received. And finally, as to our own cases it may be added that the rule of evidence which we here declare is the sound one, is distinctly recognized by this court in Bank to be such in the very much later case of *Sprague* v. *Walton*, 145 Cal. 228, [78 Pac. 645], where the effectiveness by delivery of a gift of the community property from the husband to the wife was involved. This court declared: "His purpose was a matter between him and her exclusively, and was manifested and could be proved by his contemporaneous declarations, or by his declarations made before or after delivering the orders. There is no better proof of intention than declared intention, and it is often the only means of proof." There is noting in *Estate of Cornelius*, 151 Cal. 550, [91 Pac. 329], in conflict herewith. Indeed, *Estate of Cornelius* contains a further exposition of the meaning to be given to the language of this court in *Bury* v. *Young*, and the interpretation there put upon it is unobjectionable. There again there was a delivery passing title, and, expounding *Bury* v. *Young*, it is declared: "If after such a conveyance is so delivered that the grantor has no dominion or control over it or right to recall it, he gains possession of it and wrongfully destroys it, there can be no doubt that he cannot profit by his wrongful act nor deprive his grantees of their interest thereby without their consent." Finally may be cited *Hayden* v. *Collins*, 1 Cal. App. 259, [81 Pac. 1120], where evidence of the conduct of the asserted grantor after the deed was placed in escrow was admitted. The case was discussed under this evidence. It was held to show nondelivery, and a hearing before this court was denied.

Turning elsewhere to the authorities, it will be found that there is a difference of view upon this question. Some courts, such as Illinois (*Miller* v. *Meers*, 155 Ill. 284, [40 N. E. 577]), hold to the rule of evidence asserted to have been declared in *Bury* v. *Young*. *Henry* v. *Phillips*, 105 Tex. 459, [151 S. W. 533], is to like effect. But in the Encyclopedia of Evidence many cases will be found cited to the effect that (to quote the text), "The grantor's declarations, both prior to the execution of the deed and those made subsequent to the execution, are admissible." While to the further statement that they

may be received in proof of an intent to deliver, but not in disproof of such intent, *Bury* v. *Young* alone is cited. And even in Illinois it is to be noted that in *Merki* v. *Merki,* 113 Ill. App. 518, that court in 1904 declared that when the question whether a deed has been delivered is a doubtful or debatable one, testimony of the acts and conduct of the grantor with reference to the property subsequent to the date of the grant is admissible. Devlin (1 Devlin on Deeds, sec. 280a) adopted the rule of evidence that where the delivery of a deed to a third person, to be delivered to the grantee after the death of the grantor leaves the intention of the grantor in doubt, subsequent acts of the grantor or of the depositary may be proven for the purpose of showing the intent of the grantor at the time the deed was placed in the hands of the third person. To the same effect is *O'Brien* v. *O'Brien,* 19 N. D. 713, [125 N. W. 307], where the supreme court of North Dakota reached the same conclusion after an elaborate review of the authorities, including those from this state. And further, in support of the rule as we have declared it should be, may be cited *Johnson* v. *Johnson,* 24 R. I. 571, [54 Atl. 378], and *Hale* v. *Joslin,* 134 Mass. 310.

As to the further claim of appellants that evidence of the conduct of Kidd—including his declarations to Morton—while he claimed to be holding the deed as depositary of the grantee were improperly admitted by the court. Proof of these acts and declarations of Kidd was through original and independent evidence offered by plaintiffs in their case in chief and not by way of impeachment. Conceding, without deciding, that as so offered by plaintiffs in their main case this evidence was inadmissible, we think nevertheless that such admission should not be held to be so prejudicial as to warrant a reversal. While it is a fact that Kidd was called by plaintiffs as a witness and examined by them as to the delivery of the deed to him by Williams it was not essential to the making out of a case entitling them to the relief sought that they should have called him as a witness. As pointed out by their counsel in the last argument before this court, plaintiffs by adopting a different order of proof than was pursued by them on the trial below might have thrown on defendants the burden of proving the delivery of the deed in question and might have sustained their case without calling

Kidd as a witness at all. It is true that in such condition of the proof made by plaintiffs defendant would make out a *prima facie* showing of delivery by the production of the deed by the grantee. (*Zihn* v. *Zihn,* 153 Cal. 405, [95 Pac. 868] ; *Phillips* v. *Menotti,* 167 Cal. 328, [139 Pac. 796].) But this *prima facie* showing would have been overcome by plaintiffs by proof of the unquestioned fact in the case that the grantee had no knowledge of the existence of the deed and did not come into possession of it until after the death of the grantor Williams. (1 Devlin on Real Estate, 3d ed., sec. 294; *Mitchell's Lessee* v. *Ryan,* 3 Ohio St. 382; *Trask* v. *Trask,* 90 Iowa, 318, [48 Am. St. Rep. 446, 57 N. W. 841] ; *Thompson* v. *Sullivan,* 138 Mich. 265, [101 N. W. 528] ; *Moore* v. *Trott,* 156 Cal. 353, [134 Am. St. Rep. 131, 104 Pac. 578].) And in that state of the case defendants would have been compelled to call Kidd as their own witness to prove the alleged delivery to him of the deed to the grantee named in it. In the order of proof which we have just adverted to defendants without the testimony of Kidd, producing him as their own witness, could not make out a case of delivery of the deed and Kidd having testified to such delivery could undoubtedly have been cross-examined by plaintiffs with a view to eliciting evidence of his acts and declarations inconsistent with the delivery claimed and if he denied such acts and declarations proof thereof would have been permissible to plaintiffs by way of impeachment. Undoubtedly, evidence of the acts and declarations of Kidd inconsistent with his testimony that the deed was delivered to him for the grantee would be highly material to plaintiffs and as plaintiffs by simply following the order of proof, as no doubt they would do if a new trial were granted, could compel defendants to call Kidd as a witness and thus inevitably be afforded an opportunity to introduce evidence of his acts and declarations as inconsistent with a claim of delivery and by way of impeachment, we cannot perceive how any prejudicial result can be attributed to their admission which could warrant granting a reversal. If improperly admitted on the trial as original and independent evidence, still, as by adopting a different order of proof they unquestionably must be admitted as impeaching evidence on another trial, the mere fact that the trial court in admitting them did not fully recognize their

true character as impeaching evidence could work no prejudicial injury to defendants.

The judgment and order appealed from are affirmed.

Henshaw, J., Sloss, J., Shaw, J., Melvin, J., Lawlor, J., and Angellotti, C. J., concurred.