[Civ. No. 8191. First Appellate District, Division One.—May 5, 1932.]

THOMAS DENTON MOFFATT, Special Administrator, etc., Appellant, v. WILLIAM ARTHUR LEWIS et al., Respondents.

Frank T. Deasy and Hugh K. McKevitt for Appellant.

James E. Colston for Respondents.

WARD, J., *pro tem.*—This is a proceeding. instituted by plaintiff, special administrator of the estate of Hattie T.

Lewis, deceased, to cancel, rescind, set aside and annul certain deeds conveying real estate from Hattie T. Lewis, deceased, to William Arthur Lewis, her son. The court found in favor of defendants and plaintiff appealed. It is appellant's contention that the grantor was incompetent to execute the deeds, that there was a want of consideration, and that the deeds were procured through undue influence.

The deceased was a widow who had been twice married. Plaintiff and his brother, Murry Monte Moffatt, are the issue of the first marriage. William Arthur Lewis is the only child by the second marriage. At the time of her death, on January 25, 1926, Hattie T. Lewis was approximately eighty-six years of age. About a year and a half prior to her death, the deeds in question were executed and delivery made to H. L. Van Winkle, as escrow trustee, to hold, with instructions to deliver the deeds to William A. Lewis upon the death of Hattie T. Lewis. Two and one-half months prior to her death, the escrow delivery was canceled by a written tripartite agreement signed by the escrow trustee, the grantor and the grantee, and the deeds given by manual delivery to the son, William A. Lewis. The wife of William A. Lewis was named as a defendant in this proceeding, but occupies a minor position in this litigation, so we will refer to William A. Lewis as defendant Lewis unless otherwise indicated.

To intelligently consider the evidence in this case, it is first necessary to establish the evidentiary standing and value of certain instruments designated in the reporter's transcript as: Exhibit ''E'', a transcript of the testimony in the case of *Alpin* v. *Lewis* (a suit upon a promissory note) ; exhibit ''F'', the pleadings, findings and judgment in the same case; exhibit ''G'', the purported remarks of the trial judge prior to rendering judgment in that case; and exhibit ''N'', an unverified document designated as ''Amendments to Answer''. So far as we have been able to ascertain from an examination of the sixteen-hundred page transcript in this proceeding, there is no order permitting all of these documents to be marked as exhibits, but, assuming that they were admitted, we are at a loss to know upon what theory the transcription of the remarks of the trial judge in another action, foreign to this case, advising an amendment to the pleadings, could be anything

but hearsay evidence. Statements from the bench are not evidence in the case and do not adjudicate an issue until reduced to an order, decree or judgment. The findings or the judgment in the promissory note case are not a prior adjudication of the issue of competency of Hattie T. Lewis to execute and deliver deeds conveying real estate to her son. The amendment to the answer in *Alpin* v. *Lewis* is unverified. It does not purport to be a statement of the deceased, and at the time of its filing defendant Lewis was not aware of its contents. Neither the plaintiff nor the defendant in this proceeding was a party officially or personally in that case. The transcript of evidence might be of evidentiary value in this proceeding as impeaching testimony. It is only upon this theory that we can consider any of the herein designated exhibits. In reaching this conclusion, we find support from the attorney for the appellant who stated during the trial that this evidence was offered by way of impeachment.

The truth of facts substantiating or refuting the issues in a case may not be proved by impeaching evidence. Such evidence may be considered for only a limited purpose, namely, testing the credibility of a witness, and must be discarded for any other purpose except as an admission against interest which is not involved in this case. The main contention in appellant's brief is that defendant Lewis "procured one court to adjudicate that his mother was totally and utterly incompetent to execute a promissory note to a third party and the other court to adjudicate that 16 days later she was perfectly competent to transfer all this property to him to the exclusion of his half brothers." Under the facts as they appear in this case, and under the rules of evidence, this contention cannot be approved. However, the making of the promissory note, the decedent's conduct in connection therewith, all of the surrounding circumstances and her statements, manner and appearance upon the trial, as appear from the testimony given by witnesses upon this proceeding, will be all duly considered.

There is certain evidence in this case, introduced by appellant, which is not directly denied. There is evidence that the deceased talked to pictures and attempted to show the pictures the view of the city from her window; evi-

dence that she used an excessive amount of clothing and took great delight in bedecking and adorning her headgear, etc. Many witnesses testified that she appeared irrational. Other witnesses testified that she appeared rational and that they did not observe the excessive clothing, etc. There is evidence to show that she was physically enfeebled; that her peculiarities and childishness were noticeable, but that she was able to direct her business affairs intelligently except when harassed, annoyed or put in fear, as in the incident of signing the promissory note for the Alpins. According to all of the witnesses testifying in this proceeding to that transaction, Mrs. Lewis had held a stormy session with a party who claimed that Mrs. Lewis owed her money. This interview resulted in a temporary physical collapse and mental strain which caused her to sign the note.

Four months after the execution of the deeds to defendant Lewis, Hattie T. Lewis gave a deed to a portion of the property included in the escrow conveyances to her son by the first marriage, the plaintiff herein. Appellant contends that this shows not only incompetency, but a lack of intention to make an absolute delivery to defendant Lewis. The witness, Josie Jacobi, testified in relation to this matter, that Mrs. Lewis had said to her: "Josie, Denton made me give him that deed. . . . I was afraid of Denton, and that is why I gave it to him." It may be therefore inferred that when in fear the deceased could be unduly influenced. No such condition of annoyance or fear appears upon the date of the execution of the escrow deeds. Her sagacity to seek information and advice and then use her own judgment in the direction of her business affairs, despite her eccentricities and peculiarities in manner and dress, etc., is excellent proof that she was competent to determine the proper disposition of her worldly goods. The test is, was she qualified mentally to calmly and fully realize the purpose and effect of her act in deeding this property to defendant Lewis?

On the day of the interview with her attorney, and subsequently upon the date of the execution of the deeds, the grantor was not harassed or annoyed and there is not one bit of evidence to indicate that the grantor did not have a firm grasp of the whole situation, with a perfect understanding of the effect of the transfer. She was not in fear

and her mind was clear. There is nothing in the record to indicate that she did not have the ability to accept or reject the advice of her attorney. "As a general rule, it may be stated that, in order to have that measure of capacity required by law to be of sound mind, a person must have capacity enough to comprehend and understand the nature and effect of the business he is doing." (*Pulaski County* v. *Hill,* 97 Ark. 450, 457 [134 S. W. 973, 975] ; *Estate of De Laveaga,* 165 Cal. 607, 618 [133 Pac. 307].) Accordingly, upon the issue of competency, the trial court was justified in disregarding the testimony of hallucinations, peculiarities and eccentricities if it concluded that in business affairs, and in particular this transaction, the grantor was mentally strong.

Prior to the execution of the conveyances, the grantor interviewed H. L. Van Winkle, her business adviser. She explained that she desired to make some disposition of her property. Mr. Van Winkle referred her to an attorney whom she had previously met. Defendant Lewis accompanied his mother to the attorney's office. The attorney stated in substance that he wished to talk to the mother privately, whereupon defendant Lewis left the office and Van Winkle remained in an adjoining room. The execution of the instruments of conveyance were made five days after this interview. Defendant Lewis did not know what course had been followed, and Van Winkle only knew that upon the death of the mother he was to deliver the instruments to defendant Lewis. The record does not disclose the information sought or the advice given in the interview between the grantor and the attorney. When respondent attempted to elicit this testimony from the attorney, the court sustained appellant's objection that the conversation was a confidential communication between attorney and client. Respondent was prohibited by the action of appellant from offering evidence bearing upon the question whether or not the grantor was competent to understand what she did; that she executed the conveyances without pressure or solicitation; that the contents were fully explained to her and that she understood the nature, purport, effect and consequences of the execution of the conveyances. There is testimony from the attorney, however, that the deeds were drawn at the request of the grantor; that she was not ner-

vous; that there was nothing unusual in her appearance and that she appeared to be rational. The grantor selected her attorney through her business adviser. Defendant Lewis had nothing to do with the selection, though he subsequently paid the attorney for his services.

 Appellant contends that no valuable or other consideration supported the transfer. The deeds recited love and affection. It is true such transactions are watched by courts of equity with the most scrutinizing jealousy and are generally held to be presumptively void upon proof of confidential relation. (*Soberanes* v. *Soberanes*, 97 Cal. 140–145 [31 Pac. 910].) In this case there is evidence to show that the donee was the favorite child. He assisted his mother financially, at various times cared for her physically, and gave her that attention so appreciated by the aging. In the absence of proof of fraud, love and affection is a sufficient consideration. (*Crow* v. *Crow*, 168 Cal. 607 [143 Pac. 689]; *Nichols* v. *Emery*, 109 Cal. 323 [50 Am. St. Rep. 43, 41 Pac. 1089]; *Becker* v. *Schwerdtle*, 6 Cal. App. 462 [92 Pac. 398]; *Silveria* v. *Alexander*, 25 Cal. App. 506–509 [144 Pac. 303].) " . . . a gift from parent to child is certainly not presumed to be invalid." (2 Pomeroy's Equity Jurisprudence, 4th ed., sec. 962.)

The question of what constitutes sufficient proof of undue influence depends upon the facts and circumstances of each particular case. The age, physical and mental infirmity, and slight evidence of coercion are sufficient to place the burden upon the donee of a conveyance *inter vivos*. The dependency of the parent upon the child and the authority the child exercises over the parent are also proper matters for consideration. In this case there is no proof of actual pressure or influence exercised by the defendant Lewis upon his mother to execute these conveyances. Unless fraud may be presumed from the age, etc., of the grantor, the claim of undue influence may be dismissed without further comment. The grantor placed great reliance upon the grantee, but controlled and directed her business affairs. The grantee exercised no authority over the grantor. The grantor controlled her own financial interests and the grantee followed directions.

 Where a parent is aged and enfeebled and the child acts as an authorized agent for the parent in business tran-

sactions, there exists a fiduciary and confidential relationship between the parent and the agent child. All gifts, contracts and benefits from the parent to the child are generally deemed constructively fraudulent and void. Appellant seeks to convince this court that such an agency existed in this case. The evidence discloses that there was a safe deposit box in the joint names of the grantor and grantee. When the mother, who for a period of time did not have a checking account in a bank, was unable to visit the box, the defendant Lewis, under her direction, would take money from the box and pay the mother's bills, taxes, household expenses, etc. Defendant Lewis often collected rents. So did the other brothers. The grantee at one time, in conjunction with Van Winkle, negotiated a loan upon a life insurance policy and with part of the proceeds paid the mother's bills. He employed experts to examine her mining property, etc. Assuming that a confidential relationship existed between this mother and son and that it was incumbent upon the defendant Lewis to prove that undue influence was not used, still the trial court could have found substantial evidence in the record from all of the circumstances surrounding this transaction that undue influence was not used. Defendant Lewis did not know the nature of the instruments contained in the package delivered to Van Winkle until a later date. This evidence stands uncontradicted. Defendant Lewis told one of the brothers that the mother was to visit an attorney to make disposition of her property, and this brother subsequently discussed the matter with the members of the household of which plaintiff was a part. There is nothing in the record to indicate that the grantor was forced, persuaded or even solicited to visit the attorney, or to execute the conveyances. The mother had an opportunity between the five days intervening from the date of the interview with the attorney and the date of execution of the conveyances to discuss this matter with the other brothers and they in turn with her. The half brothers could have made any independent investigation they desired. Appellant cites *Nobles* v. *Hutton,* 7 Cal. App. 14 [93 Pac. 289, 291]. In that case the court said: ''The circumstances under which the transfer of the property was made to the defendant were, upon their face, such as to create suspicion as to the good faith of the transaction.'' The test is the

good faith of the party receiving the benefits of such a conveyance. In this case the court found that the defendants did not take advantage of the grantor and that the deeds were executed as the free and voluntary act of Hattie T. Lewis.

Appellant cites *Williams* v. *Kidd*, 170 Cal. 631 [Ann. Cas. 1916E, 703, 151 Pac. 1]. In the present case the grantor parted with the deeds by delivery to the escrow trustee. In the Williams case the deeds were kept in the grantor's safe and the court said: "The solution of this question is grounded entirely on the intention of the grantor, and this essential matter of intention is a question of fact to be determined by the trial court from a consideration of all the evidence in a given case bearing upon the question." (*Williams* v. *Kidd*, *supra*, at p. 639.)

In November, 1925, the escrow trustee became ill. The grantor heard of his critical condition and requested the grantee to get the deeds immediately. This resulted in the signing of a tripartite agreement of cancellation of the escrow contract and the delivery of the deeds to defendant Lewis in the presence of two disinterested witnesses. There seemed to be some confusion in the mind of defendant Lewis as to when the deeds were delivered and by whom, but the disinterested witnesses were emphatic that it was the grantor who requested the deeds; that she was rational and knew what she was doing when she delivered the deeds to defendant Lewis.

In *Bury* v. *Young*, 98 Cal. 446, 449 [35 Am. St. Rep. 186, 33 Pac. 338, 339], the court said: "If the owner of land desires to convey the same, but not to have his deed take effect until his decease, he can make a reservation of a life estate in the deed, or it may be done by the absolute delivery of the deed to a third person to be passed to the grantee upon the decease of the grantor, the holder in such case being a trustee for the grantee."

In this case, Van Winkle was a trustee for defendant Lewis. The cancellation of the escrow delivery was but another proof of the absolute intent on the part of the grantor to relinquish all of her right and title to the property to the grantee.

Many citations have been submitted by appellant correctly enunciating legal principles, but they do not fit the facts

of this case. The determination of the questions involved are primarily questions of fact. Upon the issues raised by the pleadings, there is a substantial conflict in the evidence. The finding of the trial court is therefore final.

Judgment affirmed.

Cashin, J., and Knight, Acting P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 4, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 30, 1932.