[Civ. No. 202.   Fourth Appellate District.—February 19, 1930.]

LOU E. DOCKSTADER, Plaintiff and Appellant, v. THE FIRST NATIONAL BANK OF LEMOORE, a National Banking Association, Defendant and Appellant.

Claude L. Rowe for Plaintiff and Appellant.

Clark Clement for Defendant and Appellant.

SLOANE, P. J.—This appeal involves title to two parcels of land in Kings County which may be sufficiently referred to for purposes of this opinion respectively as the "McBee Ranch" and the "Lemoore property."

For an understanding of the case the following preliminary facts may be stated: While both parcels of land stood of record in the name of the defendant J. W. Dockstader, he obtained loans of money aggregating the sum of $11,800 on credit of the reputed ownership of said real property, from the defendant and cross-complainant, the First National Bank of Lemoore, a national banking corporation.

The bank afterward brought suit to recover on this loan and procured an attachment lien thereon, subsequently merged into a judgment lien. The plaintiff Lou E. Dockstader, wife of defendant J. W. Dockstader, claiming ownership of both parcels of real property, thereafter commenced the present action to quiet title against her husband and the bank.

The husband disclaimed and the bank by answer denied plaintiff's title and alleged by way of cross-complaint that plaintiff's claim of ownership was based upon two separate deeds from her said husband executed in fraud of the latter's creditors, particularly the cross-complainant bank, and demanding the setting aside and cancellation of said deeds.

The trial court gave judgment in favor of plaintiff, quieting her title to the Lemoore property and in favor of the cross-complainant bank sustaining its lien on the McBee ranch.

Both parties have appealed, the plaintiff as to the McBee ranch and the cross-complainant as to the Lemoore property.

The issues as to the McBee property, being the less complicated, will be first disposed of.

### Plaintiff's Appeal.

The trial court's findings as to the McBee property are sufficient to sustain the judgment for cross-complainant. The sufficiency of the evidence to support the findings is not questioned.

Plaintiff's claim for a reversal is based upon her objection alleging insufficiency of the cross-complaint to state a cause of action. And certain alleged errors of the court in the admission of evidence at the trial.

Plaintiff's counsel thus states the alleged insufficiency of the cross-complaint.

"Respondent nowhere in his cross-complaint alleges a transfer of the property from Mr. Dockstader to respondent (appellant), or title in her. In fact they directly aver that the essential element of a transfer, viz., a delivery of the deed, is lacking."

This refers to the deed alleged in the cross-complaint to have been dated on the first day of August, 1925, and recorded on the eleventh day of April, 1927, purporting to convey title to the McBee property from J. W. Dock-

stader to the plaintiff, his wife, and which is claimed by her as the sole muniment of her title to this ranch. She in her answer to the cross-complaint denies that it was not delivered; the trial court found that it was delivered. The undisputed evidence shows that it was filed for record by her, and its recordation under these circumstances implies a delivery.

Since prior to the execution of this deed her husband, J. W. Dockstader, was the record owner of the McBee ranch, a holding that there had been no delivery of this deed would leave appellant without any evidence of title whatever, and while such finding might leave no deed subject to cancellation, it would leave appellant without a color of title to be quieted.

We think the execution and delivery to appellant of this deed from her husband to the McBee ranch is sufficiently pleaded and shown by the evidence, and that the deed was subject to annulment and cancellation upon a showing that it was fraudulently given.

The objections to the introduction of evidence are equally without merit. They were directed to questions addressed by counsel for cross-complainant to the witness Campbell. At the time the loans to defendant J. W. Dockstader were made, one N. W. Sorrick was cashier and manager of the bank and conducted the negotiations. At the time of the trial the witness Campbell was cashier and manager. He was permitted to answer over appellant's objection a question propounded by counsel for respondent as to whether Mr. Campbell during the time he was manager would have extended this credit to defendant Dockstader, had he known the latter had deeded this property to his wife. He answered: "Why I might have extended a small amount of credit to Mr. Dockstader." "I would not have renewed the $11,500 note unless Mrs. Dockstader signed the note."

This question and answer might have been directed to the custom of the bank in such matters, but it was clearly incompetent to show whether or not the transaction in question at the time the note was renewed was influenced by the state of the title to this property, as this witness was not present when the loans were made.

The matter is shorn of prejudice, however, by the fact that the cross-complaint alleges, other evidence was introduced and the trial court found that the renewals of these loans to J. W. Dockstader were induced by reliance on his representations that he was at the time the owner of all this real property.

Besides, under the findings and judgment of the trial court, it is adjudged that the McBee ranch was at all times the community property of Mr. and Mrs. Dockstader, and was subject to J. W. Dockstader's debts.

The judgment affirming cross-complainant's lien on the McBee property is affirmed.

### Cross-Complainant's Appeal.

The findings of the trial court sustaining the title of plaintiff Lou E. Dockstader to the premises described as the Lemoore property are to the following effect:

That it is true that plaintiff above named, Lou E. Dockstader, is now and for a long time hitherto has been the owner and in possession of those pieces and parcels of property situate in the county of Kings, state of California (describing the Lemoore property).

That it is true that the First National Bank of Lemoore claims and asserts an interest in said real property hereinabove set forth adverse to the plaintiff.

That it is true that said defendant cross-complainant has not any estate, right, title or interest whatever in said land or premises or in any part thereof. (Referring to the Lemoore property.)

That it is true that said cross-complainant First National Bank of Lemoore claims an interest in all of said described real property, upon the ground that said J. W. Dockstader is the owner thereof as community property, and that it is true that said cross-complainant claims an interest in said property upon the alleged ground that the conveyances thereof from the defendant J. W. Dockstader to his wife Lou E. Dockstader are void because they were recorded with intent to hinder, delay and defraud the cross-complainant, but that said claims, as far as the Lemoore property is concerned, are unfounded.

That it is untrue that ever since the ninth day of March, 1918, the said J. W. Dockstader has been or now is the owner or in possession of the said Lemoore property.

That it is not true that said deed of March 9, 1918, conveying the Lemoore property to Lou E. Dockstader was never delivered.

That it is true that the said J. W. Dockstader and said Lou E. Dockstader are and at all times herein mentioned were husband and wife, and for many years prior thereto had been husband and wife.

That it is not true that all of the property in the complaint described has been acquired and is community property, and it is not true that said property has always been treated by the said J. W. Dockstader and the said Lou E. Dockstader as community property, save and except that it is true that said property described as the McBee ranch has been acquired during their marriage out of community earnings, and is community property and has been treated by said J. W. Dockstader and Lou E. Dockstader as community property.

That it is true that on various times and occasions from and including the fourth day of October, 1922, to the twenty-seventh day of January, 1927, the said J. W. Dockstader orally represented to said bank that he was and is the owner of all of the real property in said complaint described or referred to.

That it is true that he so represented to said bank at the time he negotiated the said loan commencing on the fourth day of October, 1922.

That it is true that he so represented in a written financial statement on the twenty-second day of May, 1924, or on the sixth day of March, 1926, or on thhe twenty-seventh day of January, 1927.

That it is true that said bank made said loans on the representations of said J. W. Dockstader that he owned all of said property.

That it is not true that said cross-defendant Lou E. Dockstader knew said loans were being made, and/or said money being obtained by the said cross-defendant J. W. Dockstader on the representation that he was the owner of all of said property.

That it is not true that said bank had no knowledge of the existence of said conveyance of March 9, 1918, prior to or on or about the twelfth day of April, 1927; or for the reason that the recordation of said deed was not published

in the official real estate reports in said county of Kings, but said bank had constructive knowledge of the recording of said deed.

That it is not true that of said sum of $11,500 the sum of $6,800 was borrowed from said bank by the said J. W. Dockstader to build a dwelling-house upon a portion of said Lemoore property.

That it is true that the said J. W. Dockstader has not in his name any property out of which said judgment shall be satisfied.

That it is true that said bank made said loans on the representation of said J. W. Dockstader that he owned said McBee ranch.

That it is true that when said J. W. Dockstader procured said loans from said bank he was solvent and in good financial circumstances.

That it is not true that there was no consideration paid or given for said deed of March 9, 1918, but that it is true that a valuable consideration was paid by the said Lou E. Dockstader to the said J. W. Dockstader for said deed of March 9, 1918, to the Lemoore property.

That it is not true that said deed of March 9, 1918, was recorded as a part of a scheme on the part of the said J. W. Dockstader and Lou E. Dockstader, or either of them, formed with the intent and/or purpose of preventing said bank from collecting said indebtedness.

That it is true that said Lemoore property is exempt from execution under said judgment No. 528 of said bank against said J. W. Dockstader.

That it is true that in equity and good conscience the said cross-defendant Lou E. Dockstader should be permitted to retain the said Lemoore property conveyed as aforesaid.

The cross-complainant bases its appeal from the judgment in favor of the plaintiff Lou E. Dockstader affecting the Lemoore property on the alleged ground of insufficiency of the evidence to support the findings on which the part of the judgment appealed from is predicated. The substance of the cross-complainant appellant's position is that the court having found that the loans in question to J. W. Dockstader were induced by fraudulent representations relied upon by the bank and that he was the owner of these two parcels of land, and the fact that plaintiff Lou E.

Dockstader retained the deed from her husband to the Lemoore property unrecorded, covering all of the periods of negotiations of these loans, and that the money procured by the loans was used in large measure and presumptively with knowledge of the wife, in the improvement of the Lemoore property, raises a strong implication that she had knowledge of the fact that these loans were being granted on the strength of the apparent ownership of the real property by the husband. There would be strong reason for this contention if respondent's claim that the Lemoore property was deeded to Mrs. Dockstader by her husband as a gift and without a consideration from her was true. Respondent states his case at page 33 of his opening brief as follows:

"Clearly the court has found that J. W. Dockstader was guilty of fraud. The question in this case therefore, is whether the wife, Lou E. Dockstader, should be permitted to claim that she is the owner of the property, after holding an unrecorded deed for nine years, and permitting her husband thereby to commit a fraud on the bank, by representing that he was the owner of this particular property, and obtaining credit thereon."

Respondent quotes largely from the case of *Bush & Mallette Co.* v. *Helbing,* 134 Cal. 676 [66 Pac. 967]. This was an action in which a deed was made May 15, 1893, by the defendant Louis Helbing to his wife Louise Helbing, when plaintiff was not a creditor of the defendant Helbing. The deed so made to the defendant was executed as a deed of gift. The Supreme Court says in the course of the opinion:

"One of the main questions in the case is as to whether or not such deed is void as to subsequent creditors. The general rule is, that a deed of gift is valid, if the grantor was not indebted at the time he made it, or had ample means outside of the property conveyed with which to pay his indebtedness. This is so held for the reason that a man's property is his own, and he has a right to give it away if he so desires. If it be made while the grantor is free from debt, or while his solvency is not questioned and he has ample means, after so deeding part of his property, to meet all of his obligations, it can injure no one, and it is not the business of anyone except the grantor and grantee.

"To this rule there is a well-known exception. This exception is that a deed of gift, fraudulent in its inception, and made with an intent to enable the grantor to defraud future creditors, is void. A creditor has the right to believe that his debtor has dealt fairly with him, and if, in view of future indebtedness, and secretly and without the knowledge of the creditor, the debtor makes a fraudulent conveyance of his property upon which he knows his contemplated creditor relies or has a right to rely, this is actual fraud, and renders the conveyance void."

The trial court had held that this deed could not be defeated as to the defendant, the wife of the grantor, because of the fact that it had not been shown that she was a party to the fraud. The opinion continues:

"In this view of the law the court was in error. A deed of gift made by the grantor for the purpose of defrauding his creditors is none the less fraudulent because the grantee took no part in the fraud. Such grantee is not a purchaser for value, and being a party benefited by the gift, receiving that for which nothing has been paid, is not in a position to claim the benefit of a conveyance made for the express purpose of defrauding creditors. A man must be just before he is generous. If he makes a deed of gift to his wife it must be with no fraudulent purpose, and openly and under such circumstances that the law will impute no fraud as to his conduct. . . .

"It is well settled that it is the motive of the grantor and not the knowledge of the grantee that determines the validity of the transfer. The grantee, however innocent, cannot obtain the fruits of a voluntary fraudulent transfer. . . .

"The court below was of the opinion that defendant Louise (Helbing) must have been shown to have intended the fraud, and to have been connected with it. If this were true, as a proposition of law her intention might be inferred from her conduct and all the circumstances of the case. It is well said by Wait in his work on Fraudulent Conveyances (sec. 281): 'In litigation of the class under consideration, great latitude should undoubtedly be allowed in regard to the admission of circumstantial evidence for the purpose of proving participation in manifest fraud. Objections to testimony as irrelevant are not favored in

such cases since the force of circumstances depends so much upon their number and connection. The evidence should be permitted to take a wide range, as in most cases fraud is predicated on circumstances, and not upon direct proof.' . . .

"In this case the deed was made without consideration; the grantor continued to deal with the property as before; the deed was kept secret and not placed of record; when the wife was called upon to testify the husband objected; the materials went into her property with her knowledge, and with no statement to the plaintiff as to her title. All these matters might be true and yet the deed might not have been made with any intent to defraud. But the circumstances certainly are such as to call for a full, fair and complete explanation. The burden was shifted upon the defendant to show that the transaction was honest, and with no fraudulent purpose. The fact that a deed is kept secret and not recorded is a very potent badge of fraud. In *Francis* v. *Lawrence*, 48 N. J. Eq. 511 [22 Atl. 259], the wife retained the deed and the husband obtained credit by representing that he was the owner of the house and lot conveyed. In speaking of the transaction the court said:

" 'At the time of these representations, except the first, his wife was in possession of a conveyance of the property from him to his brother-in-law, for the purpose of vesting title in her name. The deed was not delivered to the grantee and not placed upon the record, but was held by the wife, and the husband was thus enabled to trade upon the false credit which he acquired by being the apparent owner of the property, while the deed was ready to be put upon the record at a moment's notice.' "

Respondent has strongly fortified his position with citations supporting this view of the law, and there was undoubtedly much evidence introduced on the trial of the present case tending to justify an inference that the wife and plaintiff here had notice that her husband was obtaining credit on the strength of his record title to this property. If the trial court had not found against these contentions and there had not been sufficient conflict in the evidence to give substance to the conclusions of the trial court, the judgment here might well have been rendered against the cross-defendant, but we think that there was substantial

evidence to support the findings of the court against the cross-complainant as to the Lemoore property.

On the important question of consideration, the evidence disclosed that the defendant J. W. Dockstader and a deceased brother, Hi Dockstader, had been for many years co-partners in all of their property holdings and business transactions, and that this property was acquired by them as such copartners. That the brother Hi Dockstader, had been an inmate of the household of his brother J. W. Dockstader, and that Mrs. Dockstader had for many years boarded him and rendered personal services for him, and that it was his purpose that his interest in the property should ultimately go to Mrs. Dockstader in a manner to compensate her for the obligations he felt he had incurred. Prior to his death he conveyed all of his interest to his brother, J. W. Dockstader, with the agreement and understanding that the latter should hold and administer the same until all the debts and incumbrances thereon were paid off, and that he should then convey this Lemoore property to Mrs. J. W. Dockstader for the benefit of herself and the children. This arrangement amounted to a trust in J. W. Dockstader which was finally executed by the conveyance of March 9, 1918, of the Lemoore property to the plaintiff, Lou E. Dockstader, and we think was upon an adequate consideration.

Our examination of the record discloses that on each point of alleged insufficiency of the evidence to sustain a specified finding, there was some material evidence to justify the finding which makes it conclusive on this court.

It may be said that the evidence that cross-complainant was not without notice of the existence of the unrecorded conveyance to Mrs. Dockstader of the Lemoore property is very slight. Of course, the constructive notice of the recording of this deed after the 27th of September, 1926, the date of such recordation, is sufficient. But there is some evidence that prior to that time officers of the bank were informed that Mrs. Dockstader owned the Lemoore property. There is the testimony of J. W. Dockstader in answer to the question ''Q. Did you ever tell the First National Bank or any of its officers that you deeded this property (referring to the Lemoore property) to your

wife? A. I told Mr. Hinkle that that was my wife's property. Mr. Hinkle was one of the cashiers, clerks of the bank.'' A witness, Bramkamp, testified that he was present at a conversation between J. W. Dockstader and Mr. Sorrick, the cashier and manager of the bank, who supervised the Dockstader loan, and that he heard Sorrick make the statement that Mr. Hinkle took the first financial statement from Dockstader. This was corroborated by the witness Cochrane, who testified to a statement of Mr. Sorrick, made in his presence, to the effect that he thought Mr. Hinkle had taken the first financial statement from Mr. Dockstader and that Sorrick said: ''It was probable the general run for the bank for Mr. Hinkle to take care of that.''

Tending at least to show that the failure to record the deed to the Lemoore property was not by reason of any intent to deceive or defraud creditors, are the facts testified to that at all times subsequent to the date of the deed in question, Mrs. Dockstader collected any rentals accruing on the Lemoore property, advertised in her own name for renters, paid the taxes and insurance with her own checks and from her own funds, although these were kept in a joint account with her husband, and there is some significance in this connection, to the fact that the deed itself was acknowledged before the notary who customarily took acknowledgments for the bank. These conditions would not likely exist in connection with any deliberate intent to conceal the transfer from the bank.

Mrs. Dockstader herself denies that she had any knowledge of any loans to her husband negotiated by the bank in reliance upon his apparent or represented ownership of this property by her husband; and Mr. Dockstader testified that he at no time informed his wife of these loans. The bank never called them to her attention. It may be assumed that in their business and domestic relations she was aware that he was securing money from some source, but as he was evidently a man of considerable affairs, and at the time solvent, it may reasonably be assumed that it did not occur to her that his credit was being bolstered up on any assumption that he owned this particular property.

Dealing with matters of inference from the conduct and relations of all the parties, it may be a matter of doubt as

to the amount of reliance placed on any of the financial statements alleged to have been made to the bank.

Mr. Dockstader was evidently in the confidence of the bank as a steady patron, and on the basis of his general solvency, which existed until some time after the placing of these loans. Even the criticisms of the bank examiner as to the unsecured conditions of these notes did not lead the bank to any particular investigation or attempt to obtain security.

To the extent at least of the value of the McBee ranch, it turns out that cross-complainant was not prejudiced by any misapprehensions as to its ownership.

The finding that the Lemoore property is exempt from execution, when qualified as it is by the statement contained in the finding, that it is exempt from the judgment obtained by the bank against J. W. Dockstader is clearly correct under the general finding that this property belongs to the plaintiff Lou E. Dockstader, who was not a party to the judgment.

Without going into the details of the voluminous transcript of the evidence, we are satisfied that the judgment quieting plaintiff's title to the Lemoore property cannot be overturned for insufficiency of the evidence.

Both judgments are affirmed.

Barnard, J., and Marks, J., concurred.