[Civ. No. 7774. Second Appellate District, Division Two.—March 12, 1931.]

In the Matter of the Estate of MARGARET M. CLAMPITT, Deceased. H. T. JOHNSON, as Guardian, etc., et al., Appellants, v. RAY L. RILEY, Controller, etc., Respondent.

Harold E. Prudhon and John W. Carrigan for Appellants.

David Tannenbaum, W. H. H. Gentry and Charles M. Cassin for Respondent.

THOMPSON (IRA F.), J.—This is an appeal from a decree settling and fixing the inheritance tax in the estate of Margaret M. Clampitt, deceased, at the sum of $54,830.64.

■ The basic reason for the appeal is the inclusion in the estate as property upon which the tax is computed, of certain properties which it is claimed by appellants passed by deeds executed by Margaret Clampitt in her lifetime to her two children. The contention of respondent is that title did not pass because there was no delivery of the deeds, there being absent from the act of handing the deeds to a third party an intent on the part of Margaret Clampitt, to divest herself of title. The trial court found that the deeds were not nor was an assignment of an oil lease delivered, and that they were made without a valuable or adequate consideration. The fundamental contention of appellants is that these findings are not supported by the evidence, hence we are under the necessity of setting forth the testimony.

It appears that the husband of Margaret M. Clampitt and the father of Leah and Barbara Clampitt died September 26, 1919, leaving a will in which he left his estate one-third to his wife and one-third to each of the children with the proviso that the share of each child should be held in trust by the mother until the daughters should attain the age of twenty-one years. It transpired that all of the property was community and upon distribution the decree distributed four-sixths to the widow and one-sixth to each daughter. For several years prior to the execution of the deeds in question and with several persons, Mrs. Clampitt had discussed the distribution of her husband's estate, saying that it did not carry out his intention, or to put it in words used by a witness, "that in her opinion Mr. Clampitt intended that the Clampitt estate should be divided equally between the two daughters and herself, and the decree of distribution didn't follow out that intention for the reason the community property law interfered with his intention and she wanted to carry out that intention". She talked to her attorney about it on different occasions and also to the manager of the E. A. Clampitt Co. and to the auditor, to the last of whom she said: "When I get ready to transfer I am going to telephone you." In accordance with that statement she telephoned Mr. Frederick Hoereth some time in August, 1926, asking him to take certain old deeds, seventeen or eighteen in number, to the office of Mr. Prudhon, her attorney, for the purpose of having deeds drawn to

transfer the property to her two daughters. Mr. Prudhon was absent on vacation at the time, but one of his associates took the instructions and prepared the deeds. On Mr. Prudhon's return he found the deeds; checked them over with Mr. Johnson, manager of the Clampitt Company and instructed him to take them to Mrs. Clampitt for her approval and say to her that he (Prudhon) would be out later for the purpose of taking her acknowledgments to the deeds. On September 4th Prudhon called on Mrs. Clampitt, where she acknowledged her signatures to the deeds. He then took the deeds to his office, where he affixed his own signature and notarial seal. On the day following he returned them to Mrs. Clampitt and advised her to have Mr. Johnson, who, as we have said before, was the manager of the Clampitt Company, record them. Pursuant to her attorney's advice Mrs. Clampitt took the deeds to Mr. Johnson's home and told him to have them recorded. Johnson's own words succinctly state what happened thereafter. He said: ''Took the deeds with me and I went by the office and found I had to go to Bakersfield for a few days and I put them in the safe. Didn't have time to stop to have them recorded that day, and when I came back I didn't think but what I had them recorded; put them in a safe that we didn't use every day and didn't run onto them.'' The company had three safes, one of which was used for deeds and such records and it was the receptacle for the instruments in question. They were not found or removed therefrom until about a week after Mrs. Clampitt's death. Subsequent to the execution of the deeds the Clampitt Company was incorporated and though respondent's attorneys attempt to argue that Mrs. Clampitt exercised dominion over the property after the execution of the deeds, from the fact that she received four-sixths of the capital stock, the fact remains that the undisputed evidence shows that none of the property involved in the problem before us was turned in to the corporation—its assets consisting of that which was formerly owned by E. A. Clampitt under the designation of the E. A. Clampitt Company. Mr. Johnson collected the income from the property (most of it not being income producing) and remitted to Mrs. Clampitt therefor, together with any profits from the Clampitt Company. Mrs Clampitt herself made the division of the moneys to herself and the

children. One bank account with a balance of $64,200 in the name of Margaret M. Clampitt bore this notation in her own handwriting: "This money for Leah and Barbara, one-half already theirs." Another note on another account read: "One-half or two-thirds of this amount belongs to the girls." Still another was opened in the name of Barbara H. Clampitt by Mrs. E. A. Clampitt, trustee, and a fourth and fifth, Margaret M. Clampitt, trustee, for Leah M. Clampitt and Barbara H. Clampitt, minors. And on August 11, 1927, a sixth was opened in the name of Mrs E. A. Clampitt and Leah M. Clampitt. Mrs. Clampitt died September 18, 1928, at which time Leah Clampitt was 20 years of age and Barbara was 16. It should be added that in September, 1926, she was apparently in the best of health. Also, it should be noted that the property which was deeded to the daughters made about an equal division of the entire estate between the three, or in other words, accomplished what Mrs. Clampitt declared her desire to be to divide the estate into three parts in accordance with her understanding of the will of her husband. No testimony was adduced by respondent in opposition to that of objectors, which we have already summarized.

Reduced to their fundamentals, all the contentions of respondent amount to this: that the evidence does not disclose an intent on the part of Mrs. Clampitt to effect a change of ownership. It is argued that the evidence is in such state that the following language from the case of *Williams* v. *Kidd,* 170 Cal. 631 [Ann. Cas. 1916E, 703, 151 Pac. 1, 3], when applied here establishes that there was no delivery: "It is essential to the validity of a transfer of real property that there be a delivery of the conveyance with intent to transfer the title, and the true test under which delivery is to be determined is in ascertaining whether in parting with the possession of the conveyance the grantor intended thereby to divest himself of title. If he did, there was an effective delivery of the deed. If not, there was no delivery. The solution of this question is grounded entirely on the intention of the grantor, and this essential matter of intention is a question of fact to be determined by the trial court from a consideration of all the evidence in a given case bearing upon the question. (*Bury* v. *Young,* 98 Cal. 451 [35 Am. St. Rep. 186, 33 Pac. 338]; *Kenniff* v.

*Caulfield,* 140 Cal. 34 [73 Pac. 803]; *Estate of Cornelius,* 151 Cal. 552 [91 Pac. 329]; *Follmer* v. *Rohrer,* 158 Cal. 757 [112 Pac. 544].)'' We are unable to agree with the contention of respondent and the unsoundness of the position may be very shortly demonstrated. Let us suppose that Mr. Johnson had followed his instruction and recorded the deeds instead of leaving for Bakersfield to care for other matters and forgetting them, could it be seriously argued that the essential intent on the part of Mrs. Clampitt was lacking? We think not. There was a compelling reason in her mind to effect such a conveyance—expressed to her friends, her lawyer and the business manager·of the concern in which she was heavily interested. Her purpose was further made manifest by the very execution of the deeds, and the instruction of her attorney to have Mr. Johnson record them was complied with so far as she was able to do so. There is no evidence that Mrs. Clampitt exercised or attempted to exercise any dominion over the property after the manual delivery of the deeds to Johnson. There is no suggestion in the record that she was attempting to carry out a testamentary scheme to avoid probate or collateral inheritance taxes. In truth the fact that she was in good health and retained one-third of the property in her own name repels such an inference. The only circumstance upon which the finding could have been made is from the inference which might be drawn from the failure to record. But this inference must disappear in the face of the positive testimony of the witness Johnson which is diametrically opposed thereto. We have nothing left then but a suspicion, a conjectural hypothesis that Johnson's explanation is not in fact the true one. Such a foundation is insufficient to support the findings.

Judgment reversed, with instructions to the trial court to omit from the property upon which the tax is computed the real estate deeded by Mrs. Clampitt to Leah and Barbara Clampitt.

Craig, Acting P. J., and Archbald, J., *pro tem.,* concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 10, 1931, and a peti-

tion by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 11, 1931.