[Civ. No. 1493. Fourth Appellate District.—March 8, 1934.]

ANNE L. KNUDSON, Appellant, v. H. Z. ADAMS et al., Respondents.

Patterson & Montgomery, Earl S. Patterson and William S. Scully for Appellant.

Charles D. Swanner for Respondents.

JENNINGS, J.—This action was instituted by plaintiff, a judgment creditor of the defendant H. Z. Adams, for the purpose of securing a decree setting aside certain conveyances of real property made by the aforesaid defendant to the defendant Carrie A. Love, which were alleged to be fraudulent as to plaintiff. Upon the conclusion of the trial of the action judgment was rendered in favor of the defendants. From the judgment thus rendered plaintiff has appealed.

The record shows that the following facts were developed by the evidence which was produced during the trial: The defendants H. Z. Adams and Carrie A. Love are brother and sister and the former has for many years made his home with the latter. The father of these two defendants died intestate in 1891. His estate was probated in the Superior Court of Orange County. During the course of administration certain real property of the estate was sold to the defendant Carrie A. Love for the sum of $9,000 and said defendant received a deed therefor from the administrator of the estate. On July 25, 1923, Carrie A. Love executed three separate grant deeds whereby she conveyed five-sixths

of the property which she had purchased from her father's estate to the grantees named in said deeds. These grantees were her brothers H. Z. Adams and Leon H. Adams and her sister Lilla A. Camfield. The deed to H. Z. Adams conveyed to him an undivided one-half interest in said property and the deeds to Leon H. Adams and Lilla A. Camfield conveyed to each an undivided one-sixth interest in said property. No consideration was received by Carrie A. Love for these deeds. After the deeds were executed they were handed by the grantor to the defendant H. Z. Adams with the request that he should not cause them to be recorded until after the grantor's death. H. Z. Adams placed the three deeds in a safe deposit box which was under his control. Lilla A. Camfield died on March 19, 1929, leaving a will wherein she devised her interest in the above-mentioned real property to her brother, the defendant H. Z. Adams. During the time the estate of Lilla A. Camfield was being administered it became necessary to refinance an encumbrance on the property the record title to which stood in the name of Carrie A. Love and because of the reference in the Camfield will to an interest of the testator in said property, the title company which was handling the escrow in connection with the renewal of the encumbrance objected to making a certificate of title upon said real property. With the knowledge and consent of the record owner, Carrie A. Love, the deeds theretofore executed by her on July 25, 1923, were recorded on July 24, 1930. Shortly thereafter H. Z. Adams individually and as executor of the will of Lilla A. Camfield, Leon H. Adams and Carrie A. Love joined in the execution of a new encumbrance which was placed upon the above-mentioned real property. On February 14, 1931, H. Z. Adams executed and delivered to Carrie A. Love a quitclaim deed whereby he conveyed to her all interest which he had in said property. This deed was recorded on the date of its execution. On May 25, 1931, H. Z. Adams executed and delivered to Carrie A. Love a grant deed whereby he conveyed to her an undivided one-sixth interest in said property. This deed was likewise recorded on the date of its execution. H. Z. Adams received no consideration for the execution of either of these deeds, which are the conveyances attacked by plaintiff as fraudulent. In the meantime, on April 2, 1926, a judgment

against H. Z. Adams was rendered in an action instituted by James A. Knudson against said H. Z. Adams for the purpose of foreclosing a mechanic's lien on other property owned by H. Z. Adams. On April 2, 1931, the sheriff of Orange County sold the property encumbered by the mechanic's lien to the plaintiff Anne L. Knudson, administratrix of the estate of James A. Knudson, for the sum of $22.50 and a deficiency judgment for $20,500 against H. Z. Adams was docketed. Thereafter, on April 2, 1931, Anne L. Knudson, as administratrix of her husband's estate, brought an action against H. Z. Adams on the aforesaid deficiency judgment and recovered judgment against H. Z. Adams for the sum of $20,500 and costs. A writ of execution was issued on the last-mentioned judgment and was returned wholly unsatisfied.

In her appeal from the judgment rendered against her appellant attacks a number of findings made by the trial court on the familiar ground that the findings are lacking in evidentiary support. It is particularly urged that the court's finding that there was no delivery of the grant deeds executed by respondent Carrie A. Love on July 25, 1923, to the grantees named in said deeds is vulnerable to attack on the above-mentioned ground. In this connection, it is contended that a specific finding that the deed to Lilla A. Camfield was "placed in the safety deposit box of the defendant Carrie A. Love" is entirely lacking in evidentiary support. The contention is correct. The evidence which was presented to the court established that the three deeds which were executed by Carrie A. Love on July 25, 1923, were given to H. Z. Adams by the grantor and that he deposited all of them in the same place, which was a safe deposit box under his control. In another finding the court found that the three deeds which were executed by Carrie A. Love on July 25, 1923, "were placed in a safety deposit box used jointly by her and the defendant H. Z. Adams". The only evidence which was presented to the court which tended to show that the place of deposit was used jointly by H. Z. Adams and Carrie A. Love consisted of the testimony of H. Z. Adams to the effect that he was quite sure that there were other papers of Carrie A. Love in the box. All other evidence respecting the safe deposit box indicated that it was the box of H. Z. Adams and under his exclusive

control. It is hardly necessary to observe that the situation might have been quite different if there had been presented to the trial court evidence which had indicated that the place of deposit was in fact used jointly by H. Z. Adams and his sister, Carrie A. Love. Suffice it to say, the present record entirely fails to show joint user and the court's finding to that effect is not sustained by the record.

In connection with her attack upon the finding of non-delivery of the above-mentioned deeds, appellant points out that although the trial court expressly found that there was no delivery, it also found that "the only title which the defendant H. Z. Adams had in said real property during the time a record interest stood in his name, and being from the date of the recording of the grant deed from Carrie A. Love to H. Z. Adams in 1930, to the date the property was reconveyed by him to Carrie A. Love, was a naked legal title". It is objected that the finding that respondent H. Z. Adams held bare legal title to the land by reason of the recordation of the deed is utterly inconsistent with the express finding that the deed was never delivered to him. The criticism is proper. If there was no delivery of the deed no title of any sort became vested in H. Z. Adams. It will be consistent with orderly procedure to give consideration first to appellant's contention that the court's finding of nondelivery of the deeds executed in favor of H. Z. Adams and Lilla A. Camfield is not supported by the evidence.

The circumstances which surrounded the execution of the three deeds by Carrie A. Love on July 25, 1923, and the subsequent disposal of them are established by evidence as to which there is no conflict. It appears therefrom that after the deeds were executed they were given by the grantor to H. Z. Adams with the request that he place them in his safe deposit box and that the deeds should not be recorded unless "something happened" to the grantor. The grantor testified that by the expression "something happened" she meant if she should die. It is undisputed that the grantor received no valuable consideration for the execution of the deeds. The record indicates that after the deeds were placed in the safe deposit box of H. Z. Adams they remained in the place of deposit until July 25, 1930, when they were taken from the box and with the full knowledge

and consent of the grantor were recorded. The record shows that the reason for recordation on the aforesaid date was that the title company which was handling the escrow in connection with the renewal of an existing encumbrance upon the property declined to issue a certificate of title on the property by reason of the fact that the will of Lilla A. Camfield which was then being probated contained a reference to her interest in the property and devised this interest to H. Z. Adams.

From the above undisputed facts it appears that there was, first, manual tradition of the three deeds to the grantee named in one of the deeds; second, that there is no evidence which tended to show that the grantor intended to exercise any dominion over the deeds after they were given to H. Z. Adams; third, the grantor did not thereafter attempt to exercise any dominion over the deeds; fourth, the only condition which the grantor imposed when she surrendered possession of the deeds to H. Z. Adams was that he should not cause the deeds to be recorded unless she should die, in which event they should be recorded and "given to the heirs"; fifth, the deeds were, however, recorded prior to the grantor's death with her knowledge and consent.

The establishment of the above-mentioned facts by evidence, which is in nowise conflicting, impels us to the conclusion that the trial court's finding that there was no delivery of the deeds in which H. Z. Adams and Lilla A. Camfield were named as grantees is not supported by the evidence. No consideration is given to the question of delivery of the deed in which Leon H. Adams was named as grantee, since the court's findings recite that the action was dismissed as to him prior to the trial of the cause.

In the final analysis, the essential and controlling element which must be discovered in determining whether there has been delivery of a deed is the intention of the grantor and this essential matter of the grantor's intention is a question of fact which is to be determined by the trial court from a consideration of all the evidence in a given case bearing upon the question (*Williams* v. *Kidd,* 170 Cal. 631, 638 [151 Pac. 1, Ann. Cas. 1916E, 703]; *Hefner* v. *Sealey,* 175 Cal. 18 [164 Pac. 898]; *Hotaling* v. *Hotaling,* 193 Cal. 368, 381 [224 Pac. 455, 56 A. L. R. 734]; *Lavely*

v. *Nonemaker,* 212 Cal. 380, 387 [298 Pac. 976] ; *Hodian* v. *Garabedian,* 79 Cal. App. 762 [251 Pac. 227] ; *Beyerle* v. *California Surety Co.,* 120 Cal. App. 236, 238 [7 Pac. (2d) 1034] ). However, the rule that the matter of the grantor's intention is a question of fact which rests in the determination of the trial court is necessarily qualified by the limitation that it must be reached upon a consideration of all evidence bearing upon the question. In other words, the trial court's determination that the grantor did not intend to divest herself of title is not conclusive upon a reviewing court if there is no conflict in the evidence and if it unmistakably indicates the existence of an intention to part with title.

It is our conclusion that the evidence which was presented to the trial court did unmistakably point to the existence of an intention on the part of the grantor to divest herself of title when she gave the deeds to her brother, H. Z. Adams. There is no evidence indicating an intention on her part to exercise any dominion over the deeds after she parted with possession of them. It appears that the only statement she made was an oral request that they be not recorded unless she should die. Such a reservation is by no means unusual and would not prevent the delivery from being effective if in fact she intended to deliver the deeds (*Treat* v. *Treat,* 170 Cal. 329, 335 [150 Pac. 53] ; *Stewart* v. *Silva,* 192 Cal. 405 [221 Pac. 191] ). There is no intimation that the grantor was attempting to effectuate a testamentary scheme to avoid probate of her estate or the payment of collateral inheritance taxes. Such an inference would be repelled by the fact that she retained one-sixth of the property in her own name when she executed the three deeds on July 25, 1923, and there is no evidence that she was in poor health on the aforesaid date (*Estate of Clampitt,* 112 Cal. App. 502 [297 Pac. 54] ).

The undisturbed possession of the deed in which H. Z. Adams was named as grantee by him for a period of seven years was *prima facie* evidence of both an absolute delivery and of an intent on the part of the grantor to vest in him the title to the property described in the deed (*Merritt* v. *Rey,* 104 Cal. App. 700, 705 [286 Pac. 510] ). The record fails to show the production of any evidence sufficient to rebut this *prima facie* showing. The subsequent recorda-

tion of both deeds with the grantor's knowledge and consent is likewise *prima facie* evidence of delivery (*Dockstader* v. *First National Bank of Lemoore*, 104 Cal. App. 169, 172 [285 Pac. 715]). No evidence tending to rebut this *prima facie* showing was presented. The facts that Carrie A. Love continued to live on the property after she had executed the deeds and paid the taxes assessed against it and received the proceeds which were derived from it did not indicate an intention on her part not to divest herself of title and would not prevent the delivery of the deeds from being effective (*Stewart* v. *Silva, supra*). ▇ The fact that the deeds to H. Z. Adams and Lilla A. Camfield were voluntary and that the grantor received no valuable consideration for their execution did not affect the validity of these deeds as conveyances (sec. 1040, Civ. Code; *Lieman* v. *Golly,* 178 Cal. 544 [174 Pac. 33]; *Pomper* v. *Behnke,* 97 Cal. App. 628 [276 Pac. 122]; *Haller* v. *Haller,* 102 Cal. App. 370, 375 [283 Pac. 94]).

▇ It is also our conclusion that the circumstances which surrounded the execution of the deeds by Carrie A. Love on July 25, 1923, and the manual tradition of these instruments to H. Z. Adams indicate that the grantor intended to reserve a life estate in the property in herself. This intention is particularly manifested by her direction that the deeds should not be recorded until after her death. The effect, therefore which was produced by the delivery of the deeds was, first, to vest in H. Z. Adams the title in fee to an undivided one-half interest in the property subject to a life estate in the grantor as to which life estate he was the trustee for the grantor (*Des Granges* v. *Des Granges,* 175 Cal. 67 [165 Pac. 13], and, second, to vest in Lilla A. Camfield a title in fee to an undivided one-sixth interest in the property subject to a life estate in the grantor. H. Z. Adams, who was made the depositary of the deed in which Lilla A. Camfield was named as grantee, became the trustee for said grantee (*Bury* v. *Young,* 98 Cal. 446 [33 Pac. 338, 35 Am. St. Rep. 186]; *Des Granges* v. *Des Granges, supra*). ▇ Upon the death of Lilla A. Camfield, on March 19, 1929, H. Z. Adams became vested *eo instante* with the title in fee to an additional one-sixth interest in the land by virtue of the provisions of the Camfield will whereby she expressly devised to him her ''share in home place which our father

left'' (*Estate of Yorba,* 176 Cal. 166, 169 [167 Pac. 854]; *Schade* v. *Stewart,* 205 Cal. 658, 660 [272 Pac. 567]). The fee title to this additional one-sixth interest which H. Z. Adams thus acquired was, however, subject to a life estate in Carrie A. Love as to which life estate H. Z. Adams was trustee for the life tenant. The subsequent recordation of the deeds to H. Z. Adams and Lilla A. Camfield on July 24, 1930, had no effect upon the title to the land which had become vested as above stated on July 25, 1923, when Carrie A. Love executed the deeds and delivered them to H. Z. Adams. The grantor at that time had clearly indicated her intention to part with possession of the instruments of conveyance and to exercise no further dominion over them and to divest herself of all title to the land other than a life estate.

There remains for consideration appellant's objection that the trial court's finding that the deeds executed by respondent H. Z. Adams to his sister Carrie A. Love during the year 1931 were not made for the purpose of hindering or delaying or defrauding appellant is lacking in evidentiary support. The language of the court's finding with respect to the execution of these instruments is as follows:

''The court further finds that the quitclaim deed executed and recorded by H. Z. Adams on or about the 14th day of February, 1931, in favor of the defendant Carrie A. Love to all of his interest in said real property, together with the grant deed executed by H. Z. Adams in favor of Carrie A. Love, dated the 25th day of May, 1931, to an undivided one-sixth interest in said real property, were not made for the purpose of hindering or delaying or defrauding plaintiff, or other creditors of H. Z. Adams, or for any other purpose other than to reconvey to Carrie A. Love, the real owner of said property, the naked legal title to an interest in said real property placed in the name of the defendant H. Z. Adams for the purpose of refinancing the encumbrance upon said property, and to clear the title of the apparent cloud upon the same caused by a provision in the will of Lilla A. Camfield attempting to devise an interest in said real property.''

While it is obvious that the trial court's finding that the deeds from H. Z. Adams to Carrie A. Love were not made

for the purpose of hindering or delaying or defrauding appellant or other creditors of H. Z. Adams would have been more definite and certain if the qualification that the deeds were made only for the purpose of reconveying to Carrie A. Love the bare legal title which had been placed in H. Z. Adams for the purpose of refinancing an existing encumbrance upon the land had been omitted, nevertheless there is an express finding of the trial court that the deeds were not executed for the purpose of hindering or delaying or defrauding appellant or other creditors of H. Z. Adams.

The finding is not vulnerable to appellant's attack. When the deeds mentioned in the above-quoted finding were executed, respondent H. Z. Adams was vested with fee title to an undivided two-thirds interest in the land subject to a life estate in Carrie A. Love, of which life estate he was the trustee for Carrie A. Love. Carrie A. Love's equitable interest in the land could not be subjected to the payment of the debts of H. Z. Adams (*Breeze* v. *Brooks*, 71 Cal. 169 [9 Pac. 670, 11 Pac. 885] ; *Bank of Cottonwood* v. *Henriques*, 91 Cal. App. 88 [266 Pac. 836] ; *Zeller* v. *Knapp*, 135 Cal. App. 122 [26 Pac. (2d) 704]). As to the life estate in the land to which Carrie A. Love was entitled and of which she was the equitable owner, H. Z. Adams held merely the bare legal title and at any time during the lifetime of the life tenant could have been compelled to reconvey the same to her. The effect of the execution by H. Z. Adams of the two deeds to Carrie A. Love attacked by appellant as fraudulent was to accomplish a reconveyance to the life tenant of the legal title to that interest in the land of which she was the equitable owner. The creditors of H. Z. Adams could not successfully attack this reconveyance of an interest which they could not legally subject to the payment of their claims. In so far, therefore, as the deeds operated to reinvest Carrie A. Love with legal title to such interest as she had equitably owned since July 25, 1923, the deeds were proper conveyances and in nowise subject to attack as having been executed in fraud of the creditors of H. Z. Adams. It is true that the deeds purported to convey a greater interest in the land to Carrie A. Love than she was equitably entitled to receive. The deed of February 14, 1931, was a quitclaim deed and purported to convey to the grantee whatever interest the grantor had in the property. The

deed of May 25, 1931, was a grant deed and purported to convey to the grantee the fee title to an undivided one-sixth interest in the land. ▇ However, the fact that these instruments conveyed to the grantee a greater interest than she was equitably entitled to receive did not render them invalid or subject to attack as having been made in fraud of the grantor's creditors. Even if it be assumed that appellant may, by appropriate action, subject to the lien of her judgment, whatever interest in the land, legal or equitable, her debtor owns, a matter upon which we express no opinion, she is not entitled to the remedy which she here seeks.

For the reasons stated, the judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.