[Civ. No. 1406. Fourth Appellate District.—November 16, 1933.]

HELEN BRUNNER, Appellant, v. IDA SCHILLING HUMASON et al., Respondents.

Franklin J. Cole and A. E. Crane for Appellant.

Franklin G. West and S. B. Kaufman for Respondents.

BARNARD, P. J.—The plaintiff was the daughter of John Schilling. In 1889 and after the death of the plaintiff's mother, John Schilling married the defendant Ida Schilling Humason, who lived with him for about forty years until his death, which occurred on November 7, 1929, after which she married the defendant, Dan W. Humason. During their marriage the Schillings acquired a piece of real property in Orange County which was on September 1, 1922, conveyed to them as joint tenants with the right of survivorship. In this action the plaintiff seeks to establish that this property was conveyed to her during the lifetime of John Schilling.

The complaint alleges that John Schilling was in 1922 and for a long time prior thereto had been the sole and separate owner of the property here in question; that on September 1, 1922, he deeded the property to Virginia T.

Smith and on the same day she deeded the property to John Schilling and his wife as joint tenants; that thereafter John Schilling and his wife executed a deed conveying all of this property to the plaintiff, which deed John Schilling delivered to Ida Schilling to be delivered to the plaintiff at the time of his death; that John Schilling informed the plaintiff of this fact and she signified her acceptance of the transfer; that prior to the execution of this deed Ida Schilling for a good and valuable consideration agreed with John Schilling that upon his death she would deliver the deed to the plaintiff; that in pursuance of said agreement Ida Schilling also executed the deed and became the trustee and agent of John Schilling for the purpose of delivering the deed to the plaintiff; that Ida Schilling has violated this agreement and refuses to deliver the deed; and that by reason of the unconditional delivery of the deed to Ida Schilling for the purpose named and by reason of her agreement the plaintiff became the owner of all of the property described in the deed. It is further alleged that this deed contained a provision giving a life estate in the property to Ida Schilling and that in consideration of this provision she executed and agreed to deliver the deed. In a second cause of action these allegations are repeated, it being further alleged that Ida Schilling fraudulently took this deed with the intent to deceive John Schilling and with no intent to deliver the same, and that she now holds the property in trust for the plaintiff.

The court found that John Schilling was never the sole and separate owner of the property; that he never conveyed the same to Virginia T. Smith, but that on September 1, 1922, the said Virginia T. Smith executed and delivered a deed conveying said property to John Schilling and Ida Schilling as joint tenants with the right of survivorship; that John Schilling and Ida Schilling executed a deed to the plaintiff, but that John Schilling did not deliver the same to Ida Schilling to be delivered to the plaintiff at the time of his death; that Ida Schilling did not agree that she would deliver the deed to the plaintiff upon the death of John Schilling; that Ida Schilling did not execute the deed pursuant to any agreement to deliver the same to the plaintiff upon the death of John Schilling; that Ida Schilling did not become the trustee or agent of

John Schilling for the purpose of delivering the deed; that the plaintiff did not become the owner of the property or any part thereof by reason of any unconditional delivery of this deed or for any other reason; that the deed did not provide that Ida Schilling should have a life estate in the property; that Ida Schilling did not agree to deliver the deed to the plaintiff in consideration of any such provision; that neither John Schilling nor Ida Schilling intended to divest or did divest themselves or either of them of any title to the property during the lifetime of John Schilling; that upon the death of John Schilling the title to this property vested in Ida Schilling as the survivor; and that there was never a delivery of the deed referred to by either John Schilling or Ida Schilling to any person. The court further found that there was never a delivery of this deed to Ida Schilling either for delivery to the plaintiff or for delivery to any other person; that Ida Schilling did not take possession of said deed for the purpose of defeating a conveyance of the property; that she is not fraudulently withholding said deed from the plaintiff; that she does not hold said deed in violation of any trust imposed upon her or accepted by her; that she does not hold said deed or the property described therein in trust for the plaintiff; and that, on the contrary, the said deed was never delivered to Ida Schilling for the purpose of divesting John Schilling of title to the premises described therein. Judgment was entered for the defendants and the plaintiff has taken this appeal.

The appellant particularly attacks the findings to the effect that this deed was not delivered; that neither of the grantors named therein intended to divest themselves of title to the property; that Ida Schilling did not agree to deliver the deed to the plaintiff; and that no consideration existed for any such an agreement. While a number of points are raised, they are all based on the contention that under the evidence it must be conclusively held that there was such a delivery of the deed as to immediately pass title to the appellant.

We will first briefly review the evidence introduced by the appellant. The first witness called to our attention testified that some time during 1927 John Schilling read over to her what he called a ''gift deed''; that the deed

referred to the property here in question and was from John Schilling and his wife to Helen Brunner; that he did not tell her where he was keeping the deed; and that he told her he did not expect to deliver the deed, but expected his wife to do so after he was gone. A sister of John Schilling testified that in 1927 John Schilling told her that he and his wife had made a gift deed to the plaintiff; that his wife would deliver it at his death; and that he was happy to have provided for the future of his wife and daughter. A daughter of the plaintiff testified that she heard John Schilling tell her mother that he and his wife had made a gift deed to her, that his wife had agreed to deliver it when he was gone, and that his wife would have the use of the property while she lived. Two witnesses testified that shortly before this suit was filed Ida Schilling admitted to them that she had agreed to deliver the deed to the appellant upon her husband's death, and one of them testified that he heard John Schilling in his lifetime say that he had provided for both his wife and daughter, that, there was a gift deed which he had left with his wife and which she had promised to deliver to his daughter, that his wife was to have a life estate in the property, and that his daughter was to have the property after his wife's death. Another witness testified that John Schilling had stated to him that upon his death the property was to revert to Mrs. Schilling and upon her death was to revert to his daughter and her children. Finally, the appellant testified that in 1927 her father told her that he had made out a gift deed to her, that he had given this to his wife and that ''she promises after I am gone to give it to you''; that her father further told her that he and his wife had decided a gift deed was better than a will because it would cut out all probate proceedings, and that his wife was to have the use of the property while she lived; and that her father never said anything to her about what was to be done with the deed in the event his wife died first.

Turning to the evidence introduced by the respondents, a witness who had known the Schillings for about nineteen years, testified that in the spring of 1925 Mr. and Mrs. Schilling had an accident in which their automobile ran off a grade; that about that time John Schilling told him he had made a deed so his daughter would get his prop-

erty in the event both he and his wife were killed in an automobile accident; that if either he or his wife sur-' vived the other the survivor would have the property, but that if they were both killed his daughter would get the property; that his deed was in their lock-box in the bank and would never be in the hands of anyone else unless they were both killed; that again in 1927 John Schilling told him he had things fixed so that if he died first his wife would have the property and if they both died together it would go to his daughter Helen; and that in 1929, shortly before he died, John Schilling told him that he did not think he was long for this world; that he had things arranged so his wife would get his property; that it was to be hers "with no strings on it" if he died first; and that he often remarked, "I hope if I pass out first mother enjoys it and spends it while she is alive." Another witness testified that in the spring of 1927 John Schilling read to her what he called a gift deed to Helen and told her that in no event was the deed to be delivered to Helen until after he was dead. The respondent Ida Schilling Humason testified that she lived with John Schilling for about forty years before his death; that in the latter part of February, 1925, she and her husband signed what she called an agreement that said on it "Gift Deed"; that part of the instrument was printed, part typewritten and part written in with pen; that before she signed it her husband told her that they would fix the property so that if both of them should be killed at one time it should go to his daughter; that the instrument provided that if her husband died first she was to have the property, it being community property with the right of survivorship and that if both were killed it should go to his daughter; that it contained nothing about a life interest in the property going to her; that she did not acknowledge her signature; and that they put it in their lock-box. She further testified that she never promised to hold the deed for John Schilling or for herself as trustee or in any other capacity and did not agree to deliver it to the appellant when her husband died; that she received nothing for signing it; that she never stated to anyone that she and her husband had executed a gift deed which her husband had left with her to be delivered upon her husband's death and she had never heard her husband tell anyone

that such a thing had been done; that she never told anyone that she had agreed with her husband to deliver the deed to the appellant upon her husband's death; that she and her husband were the only ones who had access to their safety deposit box and so far as she knew the instrument in question had never been removed from the box until after her husband's death when she took it out and destroyed it; that after the execution of the deed she and her husband lived upon the premises and continued to lease portions thereof to various tenants from time to time; that in 1927 they borrowed money on a mortgage on the property; and that she had made a will giving the property to the appellant's children. One witness testified that in 1927, upon the orders of John Schilling, he erected a number of additional buildings upon this property. Another witness testified that after John Schilling died the plaintiff told him she understood there was a deed to her in the safety deposit box, but that she did not know whether or not the deed had been delivered. Several other witnesses testified that at various times John Schilling had told them that the property was held as community property with the right of survivorship and that he had arranged matters so that in the event both he and his wife were killed the property would go to his daughter. It appears from the evidence that on May 25, 1927, the Schillings borrowed $2,200 from a bank, giving as security a mortgage upon this property; which mortgage contained the following clause: "The mortgagor guarantees and affirms that said property is now free from any secret equities, trusts or encumbrances made or suffered by or known to the mortgagor, except as herein recited."

With respect to the matter of consideration the appellant's position is considerably weakened by the fact that although the complaint alleged that John Schilling was the sole and separate owner of the property and that he gave his wife a life interest therein in consideration of her signing the deed, the court found, upon ample evidence, that John Schilling was never the sole and separate owner of the property, but that the same was held in joint tenancy. From the beginning Mrs. Schilling had an interest in the property which would become a sole ownership upon the death of her husband.

It is well settled that whether or not a deed has been ·delivered depends upon the intention of the grantor and that this intention is to be determined from all of the surrounding facts and circumstances. Most of the evidence shown by the record indicates that John Schilling did not intend this deed to take effect until after his death and then only in the event both he and his wife were killed at the same time. And further, that he fully understood the meaning of the joint tenancy deed under which he and his wife held the property, and that the same would belong to either of them upon the death of the other. All of the statements made by him are consistent with an intention that the deed to the daughter was not to take effect in any event until his death. Most of the statements are also consistent with the idea that the deed was not to be delivered even at his death if his wife were still alive. In none of the statements made by him was anything said with reference to what should occur if he himself outlived his wife. Many of the statements made are hard to reconcile with the existing fact of joint tenancy if Schilling intended the deed to take effect at his death and while his wife was still living, and are still harder to reconcile with all the known facts if he intended the deed to take effect immediately upon its execution. There is an entire absence of evidence as to the time when and the circumstances under which any supposed delivery took place. It is significant that the deed remained in the lock-box to which Schilling and his wife both had access, that he had it in his possession and read it to an outsider nearly two years after it was executed, that he continued to deal with the property as his own, that he borrowed money upon the property and executed a mortgage in which he affirmed that he and his wife were the owners thereof and that no other person had any interest therein, and that he continued to state that he had things so arranged that if anything happened to either himself or his wife the other would have the property.

While it may well be doubted whether the evidence is sufficient to have supported a finding in favor of the appellant, it fully sustains the findings made since, in any event, it supports the conclusion that Schilling did not intend to make a present transfer of the property, but intended the

deed to take effect only upon his death (*Williams* v. *Kidd,* 170 Cal. 631 [151 Pac. 1, Ann. Cas. 1916E, 703]), and since portions thereof support the further conclusion that the deed was not intended to be delivered except in the event of the death of both of the grantors.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 15, 1934.